[No. 46498.   En Banc.   May 29, 1980.]

BETTIE BEGGS, ET AL, *Appellants*, v. THE
CITY OF PASCO, ET AL, *Respondents*.

*Critchlow & Williams,* by *Michael E. de Grasse,* for petitioners.

*Campbell, Johnston & Roach,* by *Patrick T. Roach,* and *Slade Gorton, Attorney General,* and *Tim Malone, Assistant,* for respondents.

*Kenneth A. Cole* on behalf of Association of Washington Cities, amicus curiae.

DOLLIVER, J.—Plaintiffs are women who are employed in the Pasco Police Department. Since the commencement of this case, three plaintiffs are no longer connected with the action. Remaining are Beggs, Ralls and Supplee who were all hired by the Pasco Police Department prior to March 1, 1970. On that date, the Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act (LEOFF) went into effect. Laws of 1970, 1st Ex. Sess., ch. 6, § 2(1), p. 35. Plaintiffs sued Pasco and the LEOFF Retirement Board claiming they should be covered by the act. The trial court held they were eligible while the Court of Appeals, in an unpublished split decision, held they were not. *Beggs v. Pasco,* 23 Wn. App. 1059 (1979). We agree with the trial

court, reverse the Court of Appeals and hold plaintiffs Beggs, Ralls and Supplee are covered by LEOFF.

■ Initially defendants urge that plaintiffs be required to pursue other remedies. As the trial court found and the record supports, this argument was neither advanced nor supported by defendants at trial. Under this circumstance, we need not and do not consider this contention. *Bradbury v. Aetna Cas. & Sur. Co.,* 91 Wn.2d 504, 589 P.2d 785 (1979); *Baker v. Baker,* 91 Wn.2d 482, 588 P.2d 1164 (1979); *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 588 P.2d 1308 (1978).

On March 1, 1970, the definition of law enforcement officer was:

> "Law enforcement officer" means any ((full time)) person who is serving on a full time, fully compensated basis as a county sheriff ((,)) or deputy sheriff, including sheriffs or deputy sheriffs serving under a different title pursuant to a county charter, city police officer, or town marshal or deputy marshall: PROVIDED, That the term "city police officer" shall only include such regular, full time personnel of a city police department as have been appointed to offices, positions or ranks in the department which have been specifically created or otherwise expressly provided for and designated by city charter provision or by ordinance enacted by the legislative body of the city.

Laws of 1970, 1st Ex. Sess., ch. 6, § 1(3), p. 31.

■ The statute was amended in 1974. Laws of 1974, 1st Ex. Sess., ch. 120, § 1, pp. 318–19; RCW 41.26.030. However, the rights of plaintiffs vested under the 1970 act, and they need only meet the definition of a law enforcement officer under those provisions. *Eagan v. Spellman,* 90 Wn.2d 248, 581 P.2d 1038 (1978); *Bakenhus v. Seattle,* 48 Wn.2d 695, 296 P.2d 536 (1956).

Are plaintiffs city police officers under this definition? The statute provides that no persons shall be city police officers unless they are "[1] *regular,* [2] *full time* personnel of a city police department as have been [3] *appointed* to . . . positions . . . in the department [4] which have been

*specifically created or otherwise expressly provided for and designated* by city charter provision or by ordinance enacted *by the legislative body of the city."* (Italics ours.)

The trial court made—and no error was assigned to—the following findings of fact:

8. The plaintiffs–petitioners are full time employees of the City of Pasco Police Department and hold the position variously titled "matron–clerk," "matron–dispatcher," "clerk–dispatcher" or "matron–clerk–dispatcher." No males hold this position.

9. The position held by the plaintiffs–petitioners in the City of Pasco Police Department is regularly budgeted by the City of Pasco.

10. The position held by the plaintiffs–petitioners in the City of Pasco Police Department has been specifically created and expressly provided for by city ordinance through and by means of the City of Pasco Civil Service.

■ Thus it is the law of the case (*In re Estate of Rendsland,* 92 Wn.2d 185, 594 P.2d 1346 (1979); *Portage Bay–Roanoke Park Community Council v. Shorelines Hearings Bd.,* 92 Wn.2d 1, 593 P.2d 151 (1979)) that plaintiffs are full–time employees, they are regularly employed—as opposed, for example, to police reservists—and their positions have been specifically created and provided for by city ordinance by means of the Pasco Civil Service.

■ Defendant LEOFF Board claims the statute requires the positions in the police department to be provided directly by city ordinance and that it is not enough that the positions be created by a civil service commission created by city ordinance. We do not read the requirement in RCW 41.26.030(3) so narrowly. When, pursuant to state law, the City set up the civil service commission for the police department, the ordinance expressly provided the commission should have all the power and duties provided under RCW 41.12. Pasco Municipal Code, § 2.20.070, pp. 30–31. RCW 41.12.040(1) provides the civil service commission shall make "suitable rules and regulations" which

shall provide in detail the manner in which examinations may be held, and appointments, promotions, transfers,

reinstatements, demotions, suspensions and discharges shall be made, and may also provide for any other matters connected with the general subject of personnel administration, and which may be considered desirable to further carry out the general purposes of this chapter, or which may be found to be in the interest of good personnel administration.

The Pasco Civil Service Commission had the power to and did specifically designate the positions and titles to the positions held by plaintiffs. This is sufficient; the statutory requirement was met.

On the question of appointment, the only testimony on the subject was from defendants' witness, the Pasco Chief of Police, who stated in response to the question as to who was the appointing authority for these positions, "The appointing authority is the city manager but he lets me make that appointment, generally." *See* RCW 41.12.110, .120. Plaintiffs meet all the statutory requirements without which they could not be eligible as city police officers under LEOFF. They are in fact city police officers and are entitled to LEOFF coverage.

█ Even, however, if arguendo we accept the position of the City as to the requirement for direct provision and designation of the position by ordinance, there is another reason why plaintiffs are entitled to the LEOFF coverage. The trial court found that plaintiffs "are engaged in specialized police work and perform all the duties of a police matron in the regular course of their employment". This finding is amply sustained by the evidence and we will not substitute our judgment for that of the trial court. *Lewis v. ITT Continental Baking Co.,* 93 Wn.2d 1, 603 P.2d 1262 (1979); *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

With regard to police matrons, RCW 35.66.010 states:

There shall be annexed to the police force of each city in this state having a population of not less than ten thousand inhabitants one or more police matrons who, subject to the control of the chief of police or other proper officer, shall have the immediate care of all

females under arrest and while detained in the city prison until they are finally discharged therefrom.

The City of Pasco has over 16,000 inhabitants. State of Washington, Office of Fiscal Management, *1979 Pocket Data Book* at page 178.

RCW 35.66.020 states:

> The police matron or matrons employed or appointed in accordance with the provisions of this chapter shall be employed or appointed in the same manner as other regular members of the police departments in the city where the appointment is made.

We are unpersuaded by defendants' argument that since Pasco had no "city prison" RCW 35.66.010 does not apply. Pasco has no jail because it contracts with Franklin County. From the testimony at trial, it is obvious the city has a need for matrons and uses plaintiffs in that capacity. The contention that since 90 percent of plaintiffs' duties are clerical they cannot be considered police officers is without merit. It is not necessary that plaintiffs perform certain functions all of the time to qualify; it is necessary only that they are required to and do perform these functions. While plaintiffs are not primarily engaged in arduous and hazardous activity, the same can be said of police officers who are desk officers and of the Chief of Police—all of whom are covered by LEOFF.

Defendants argue that, even so, the Pasco City Code limits police department personnel to certain positions:

> The police department of the city shall consist of the regular, full–time personnel, appointed to the offices, positions or ranks hereinafter set forth: Chief, captain, lieutenant, sergeant, patrolman.

Pasco Municipal Code § 2.20.010, Ordinance 1431, § 1 (1970). Defendant further cites the code relative to part–time and clerical help:

> The city may provide part–time and clerical help to the police department as needed from time to time.

Pasco Municipal Code § 2.20.040, Ordinance 1431, § 4 (1970). These provisions of the city code are said to bar plaintiffs from becoming members of LEOFF.

Thus, what we have is a city that on the one hand assigns police duties to certain police department personnel, who are in fact police officers, and then attempts by ordinance to prevent them from being covered by LEOFF.

The language of the dissenting opinion in the Court of Appeals in this regard is compelling:.

> Although the Pasco Civil Service Commission apparently provides for a job classification entitled, "Police Matron," this position had never been filled. Indeed, the City has never requested the Commission to assist the police department in filling such a position. It is apparent from the record that the petitioners have been performing all of the functions of a police matron and are lacking only formal appointment to that position. Had the City complied with its statutory duty, the petitioners would hold appointive offices as defined in RCW 41.26.030(3). Alternatively, if other women had been commissioned as police matrons, those women, and not the petitioners, would be performing police matron duties. Instead, the City has avoided filling the police matron position by diluting the function and spreading it among the petitioners. It now contends that because none of the petitioners are spending "full-time" or are "primarily engaged" as police matrons, they are not entitled to LEOFF benefits. To uphold this position would sanction an evasion of the mandate of the statute requiring at least one police matron. It is incongruous for this Court to permit the City to urge its own default in requesting the Commission to fill the police matron position in compliance with its statutory duty in an attempt to block the petitioners' eligibility for LEOFF coverage.

(Footnote omitted.)

Defendants cannot have it both ways. Plaintiffs were acting as police matrons and performing matron duties; they are indeed police officers and meet the requirements of LEOFF.

█ Under the circumstances of this case, the City is estopped from now asserting plaintiffs are not in fact police

officers. The requisites for equitable estoppel are: (1) an admission, statement or act inconsistent with the claim thereafter asserted; (2) action by the other party on the faith of such admission, statement or act; and (3) injury to such other party arising from admission, statement or act. *Esmieu v. Schrag,* 92 Wn.2d 535, 598 P.2d 1366 (1979); *Shafer v. State,* 83 Wn.2d 618, 521 P.2d 736 (1974). They have been met in this case.

When the exercise of its governmental powers would not be impaired, equitable estoppel may be invoked against a municipality acting in its governmental or proprietary capacity in order to prevent a manifest injustice. *State v. O'Connell,* 83 Wn.2d 797, 523 P.2d 872, 77 A.L.R.3d 874 (1974); *Shafer v. State, supra; see Peterson v. Department of Ecology,* 92 Wn.2d 306, 596 P.2d 285 (1979). It would be a manifest injustice for the City to prevent the plaintiffs from joining LEOFF, and they are estopped from so doing.

Reversed.

UTTER, C.J., ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, HICKS, and WILLIAMS, JJ., and CLARKE, J. Pro Tem., concur.