[No. 55083-2. En Banc. January 12, 1989.]

YAKIMA COUNTY DEPUTY SHERIFF'S ASSOCIATION, *Respondent,* v. THE BOARD OF COMMISSIONERS FOR YAKIMA COUNTY, ET AL, *Appellants.*

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Ronald S. Zirkle, Deputy,* for appellants.

*Louis Daniel Fessler,* for respondent.

*Kenneth O. Eikenberry, Attorney General,* and *Karen McCarty Lundahl, Assistant,* amici curiae for appellants.

PEARSON, J.—The issue presented by this appeal is whether the binding interest arbitration provisions of RCW 41.56.430–.490 apply to security officers who are employed in the Yakima County Jail and under supervision of the Sheriff of Yakima County. The Yakima County Commissioners decided the binding arbitration provisions did not apply because the security officers were not uniformed personnel as defined by RCW 41.56.030. The Yakima County Deputy Sheriff's Association, representing the security officers, sought declaratory judgment relief in the Superior Court for Yakima County and were granted summary judgment against the County. We accepted direct review of the County's appeal and reverse.

Prior to 1984, all employees of the Yakima County sheriff's department except administrative personnel were represented by the Yakima County Deputy Sheriff's Association (Association). This bargaining unit included deputy

sheriffs, security officers, clerical and secretarial staff. Currently, the Association is the bargaining unit for the security officers only.

RCW 41.56 was first enacted in 1967. *See* Laws of 1967, 1st Ex. Sess., ch. 108. The statute generally authorizes and provides for a collective bargaining process between public employers and labor organizations representing public employees. In 1973, RCW 41.56 was amended to provide for mandatory and binding arbitration for collective bargaining involving *uniformed personnel*. The right to strike by uniformed officers was specifically prohibited. Laws of 1973, ch. 131.

The issue in this case then focuses on whether security officers qualify as uniformed personnel. Two statutes are pertinent.

RCW 41.56.030(7) defines uniformed personnel as follows:

> "Uniformed personnel" means (a) law enforcement officers as defined in RCW 41.26.030 as now or hereafter amended, of cities with a population of fifteen thousand or more or law enforcement officers employed by the governing body of any county of the second class or larger . . .

In addition, RCW 41.26.030(3) defines a law enforcement officer as

> any person who is serving on a full time, fully compensated basis as a county sheriff or deputy sheriff, including sheriffs or deputy sheriffs serving under a different title pursuant to a county charter, city police officer, or town marshal or deputy marshal, with the following *qualifications*:
>
> (a) No person who is serving in a position that is basically clerical or secretarial in nature, and who is not commissioned shall be considered a law enforcement officer;
>
> (b) Only those deputy sheriffs, including those serving under a different title . . . who have successfully completed a civil service examination for deputy sheriff or

the equivalent . . . will be considered law enforcement officers . . .

(Italics ours.)

From these statutes, it is apparent that uniformed personnel means *law enforcement officers,* and a law enforcement officer must (1) be fully compensated as a deputy sheriff, (2) serve full time as a deputy sheriff, (3) successfully complete a civil service exam or the equivalent, and (4) not serve in a position that is basically clerical or secretarial in nature.

■ From our review of the record, it is apparent security officers do not meet the statutory requirements as "uniformed personnel". They do not serve full time as deputy sheriffs, the pay schedule is different, and they are subject to a different civil service examination.

RCW 36.28.020 provides: "Every deputy sheriff shall possess all the power, and may perform any of the duties, prescribed by law to be performed by the sheriff". Generally, a sheriff may make arrests, defend the county against those who endanger public peace, execute warrants, and keep and preserve peace in the county.

A security officer's primary function is the care and custody of prisoners in the jail and at sessions of the court. The record shows security officers do not respond to breaches of the peace, except in narrowly defined locations and with limited authority, and only when on duty and working a shift. The primary function of security officers is that of correctional personnel.

This distinction between law enforcement officers and correctional personnel is specifically made in RCW 43.101 which established the Criminal Justice Training Commission to create standards and educational training for persons employed in the criminal justice system.

RCW 43.101.010(4) provides:

The term "law enforcement personnel" means any public employee . . . having as a primary function the enforcement of criminal laws in general . . .

RCW 43.101.010(5) provides:

> The term "correctional personnel" means any employee . . . who by state, county, municipal, or combination thereof, statute has the responsibility for the confinement, care, management, training, treatment, education, supervision, or counseling of those individuals whose civil rights have been limited in some way by legal sanction.

We note the Criminal Justice Training Commission has established 80 instructional hours for the correctional services academy, WAC 139–10–230, and 440 hours for the basic law enforcement curriculum. WAC 139–05–250. Unlike the law enforcement officer, the correctional officer receives no instruction in introduction to law enforcement, civil rights, civil liberty, police ethics, evidence, constitutional law, criminal procedures, etc.

We conclude the primary function of law enforcement officers and security officers differs substantially under statutory standards for the two types of employment. That difference precludes our holding that Yakima County's security officers are full–time law enforcement officers within the meaning of RCW 41.56.030(7) and 41.26.030, despite the fact there is some overlap in duties.

The Association relies principally on *Beggs v. Pasco*, 93 Wn.2d 682, 611 P.2d 1252 (1980). The Association misinterprets *Beggs,* however. The issue there was whether police matrons who met all of the statutory requirements of a police officer were improperly denied coverage in the Law Enforcement Officers and Fire Fighters (LEOFF) Retirement System. Unlike this case, the police matrons were already fully trained police officers and able to perform all of the duties required of a police officer. We held it was not necessary for the police matrons to perform law enforcement functions all of the time in order to qualify for LEOFF benefits, so long as they were required to, and were qualified to, perform all the duties of a police officer. *Beggs,* at 687.

Here the security officers, despite some overlapping of skills, are not qualified to perform all of the duties of a deputy sheriff and hence do not qualify as "uniformed personnel" for purposes of RCW 41.56.430–.490.

Judgment is reversed and remanded with directions to enter summary judgment for the appellants.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, and SMITH, JJ., concur.

Reconsideration denied April 14, 1989.