[No. 13573-0-III.    Division Three.    May 4, 1995.]

PUBLIC SCHOOL EMPLOYEES OF QUINCY, *Appellant*, v. PUBLIC EMPLOYMENT RELATIONS COMMISSION, ET AL, *Respondents*.

*Eric T. Nordlof,* for appellant.

*Christine O. Gregoire, Attorney General,* and *Spencer W. Daniels, Assistant,* for respondent PERC.

*Harriet K. Strasberg,* for respondent Classified Public Employees Ass'n.

THOMPSON, C.J. — Public School Employees of Quincy (PSE) appeals the decision of the Public Employment Relations Commission (PERC) directing an election by the office-clerical workers of the Quincy School District to decide whether to retain PSE as their bargaining unit representative or substitute the Classified Public Employees Association (CPE) in that position.[1] PSE contends PERC erred as a matter of law when it applied a rebuttable presumption in favor of severability for school office-clerical workers seeking separation from other classified school employees for bargaining unit purposes. We affirm.

The petitioned-for bargaining unit consists of eight employees: two full-time secretaries and one part-time secretary in the district's three elementary schools; one full-time secretary in the junior high school; two full-time secretaries in the high school; one clerical aide who works part time in the alternative school and part time in the high school; and one clerical aide who divides her time between the junior high school and the administrative office. CPE contended

---

[1]The Superior Court certified the appeal of the PERC decision to this court, pursuant to RCW 34.05.518.

these employees have duties, skills and working conditions different from other classified employees in the existing bargaining unit. PSE disputed the existence of a separate community of interest among the office-clerical workers. It relied in part upon the existing bargaining unit's history of representation, which dates from 1971.

Following a hearing, PERC's executive director ordered an election to determine whether Quincy's office-clerical employees wished to change their bargaining unit. His opinion cites RCW 41.56.060, which provides:

> In determining . . . the bargaining unit, the commission shall consider the duties, skills, and working conditions of the public employees; the history of collective bargaining by the public employees and their bargaining representatives; the extent of organization among the public employees; and the desire of the public employees.

The director found the subject employees perform traditional "office-clerical" tasks in support of the administrative functions of the school district. These tasks and the skills needed to perform them are distinct from the duties and skills of other classified employees such as custodians, maintenance workers, food service workers, and classroom aides, who are also part of the existing bargaining unit. The "extent of organization" factor had "little or no impact" on the director's decision because the classified work force "appears to be fully organized". While the history of bargaining through PSE is extensive, dating to 1971, the director observed that other severance cases have permitted employees to overrule their bargaining history by expressing their desires in a unit determination election. *See General Elec. Co. (River Works)*, 107 N.L.R.B. 70, 72 (1953).

PERC's executive director also recognized a line of PERC decisions which hold a school district's office-clerical workers enjoy a rebuttable presumption of severability from a bargaining unit representing the district's classified employees. *Longview Sch. Dist.*, Pub. Empl. Relations Comm'n Dec. 2551 PECB (1986); *Highline Sch. Dist.*, Pub. Empl. Relations Comm'n Dec. 3562 PECB (1990); *Omak Sch. Dist.*, Pub. Empl. Relations Comm'n Dec. 3973 PECB (1992).

These decisions are based on National Labor Relations Board (NLRB) precedent approving the separation, for collective bargaining purposes, of office-clerical workers from industrial plant employees. *See General Elec. Co. (River Works), supra; Kohler Co.*, 93 N.L.R.B. 398 (1951). In such cases, PERC has held the burden is on the party resisting the severance "to demonstrate that clerical functions are so integrated into the employer's overall structure . . . that removal of the clerical group would seriously damage the employer's ability to carry out its primary function." *Longview Sch. Dist.*, at 11.

Finally, the director rejected PSE's contention that craft severance standards applied here. *See Mallinckrodt Chem. Works*, 162 N.L.R.B. 387 (1966); *Yelm Sch. Dist. 2*, Pub. Empl. Relations Comm'n Dec. 704-A PECB (1980) (applying *Mallinckrodt's* principles to a unit of school bus drivers).[2]

PSE petitioned PERC for review of the executive director's decision. PERC held that a presumption of severance for office-clerical workers was appropriate and the presumption was not rebutted in Quincy's case. PSE then appealed PERC's decision to Superior Court, which, in turn, certified the appeal to this court. RCW 34.05.518.

The primary issue is whether PERC ignored statutory criteria and committed an error of law by applying the rebuttable presumption in favor of severability.

■ Our review of this issue is governed by the 1988 Administrative Procedure Act, RCW 34.05. RCW 34.05.570(3) provides:

The court shall grant relief from an agency order in an adjudicative proceeding . . . if it determines that:

. . . .

---

[2]Those standards are whether the proposed unit consists of employees constituting a functionally distinct department who work in occupations for which a tradition of separate representation exists; the history of collective bargaining of employees involved; the extent to which the employees in the proposed unit have established and maintained their separate identity during the period of inclusion in a broader unit; the history and the pattern of collective bargaining in the industry involved; the degree of integration of the employer's production processes, including the extent to which continued normal operation of the production processes is dependent upon the performance of the assigned functions of the employees in the proposed unit; and the qualifications of the union seeking to carve out the separate unit.

(d) The agency has erroneously interpreted or applied the law;

Under the error of law standard, the court may substitute its interpretation of the law for that of PERC's. *Bellevue v. International Ass'n of Fire Fighters, Local 1604*, 119 Wn.2d 373, 382, 831 P.2d 738 (1992). However, because of its expertise in the area of collective bargaining, PERC's interpretation of the collective bargaining statutes "is entitled to substantial weight and great deference". *Bellevue*, at 382.

■■ As noted above, PERC's application of the presumption here and in prior cases is based upon NLRB precedent. Our courts consider NLRB decisions persuasive authority in interpreting our act. *Nucleonics Alliance, Local 1-369 v. WPPSS*, 101 Wn.2d 24, 33, 677 P.2d 108 (1984). Board decisions and federal court decisions under the National Labor Relations Act have long recognized a distinction between office-clerical workers and production and maintenance workers. In *General Elec. Co. (River Works)*, at 72, the Board stated: "As the interests and working conditions of office clerical employees differ substantially from those of the production and maintenance employees, we shall, in accord with well-established Board policy exclude them from the production and maintenance unit." *See also Kohler Co.*, 93 N.L.R.B. 398 (1951); *Pacific Southwest Airlines v. NLRB*, 587 F.2d 1032, 1045 (9th Cir. 1978).

Nevertheless, PSE argues the office-clerical workers here are more akin to the maintenance and production workers of the industrial model, based upon the fact they share their jobsites, the various schools, with the other classified employees. The NLRB has distinguished between office clericals and plant clericals, but not primarily on the basis of jobsite. For example, in *Kohler Co.*, at 401, the Board held that shop office stenographers were plant clericals and should be included in the production and maintenance bargaining unit. The Board cited the fact the stenographers worked for and were answerable to division superintendents of the production and maintenance departments and the plant manager. Here, the District's office clericals work for the District's administrative officers, *i.e.*, the principals of the various

schools. Furthermore, their work is in support of the administrative functions of the District. The fact each school has a principal and office workers on site is not determinative of where the office clericals' community of interest lies.

Finally, PSE urges this court to hold the office clericals do not have a sufficient community of interest among themselves to justify severance from the existing bargaining unit. This argument concerns whether the record evidence supports PERC's findings. The findings were that the District's office clericals share (1) common duties and skills with each other and with office clericals elsewhere, and (2) a community of interest arising out of their "specific working conditions associated with their function as part of the administrative operation" of the District. Our review of the record reveals ample evidence to support these findings.

Accordingly, we hold PERC properly applied the presumption of severability in determining CPE was an appropriate bargaining unit for the District's office-clerical workers. The evidence established a distinct community of interest among the office-clerical workers based upon the nature of their work and their line of supervision.

Affirmed.

MUNSON and SWEENEY, JJ., concur.

Review denied at 127 Wn.2d 1019 (1995).