[No. 39497-5-I. Division One. March 30, 1998.]

WILLIAM C. STOOPS, *Appellant*, v. THE DEPARTMENT OF RETIREMENT SYSTEMS, ET AL., *Respondents*.

Mark S. McCarty of *Campiche, Hepburn, McCarty & Bianco, P.L.L.C.*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Jerome E. Westby, Deputy*, for respondents.

GROSSE, J. — William Stoops, employed as a "special policeman," but whose listed and actual duties were those of a park security guard or park ranger, did not meet the definition of "law enforcement officer" required for Law Enforcement Officers & Fire Fighters' Retirement System Act (LEOFF) Plan I membership. We affirm the decision of the Director of the Department of Retirement Systems (DRS) denying his petition for retroactive membership in LEOFF I, for his service in the Everett city parks in 1975 and 1976.

Stoops is a member of LEOFF Plan II. He entered LEOFF Plan II after becoming a Darrington police officer in December of 1978. In 1992, he petitioned for retroactive membership in LEOFF Plan I based on his 1975 employment as a "special police officer" in Everett. The DRS denied the petition based on the fact that this previous employment did not meet the definition of "law enforcement officer" required for LEOFF Plan I membership. After an initial proposed reversal by a department administrative law judge, the DRS Director entered a final order denying retroactive LEOFF I membership to Stoops. Stoops appeals the superior court order affirming the final order of the DRS Director.

Stoops was hired by the City of Everett on June 23, 1975 under an ordinance referring to "special policemen." He became a member of the Public Employees Retirement System (PERS) Plan I retirement system. His position was funded through a Comprehensive Employment and Training Act (CETA) grant. The job was listed as "special policeman" in the ordinance, and was described by various titles including: security guard, park ranger, municipal intern/ security guard, and "special police officer." The job description set out the nature of, and gave illustrative examples of, the work, the required knowledge, the abilities and skills, and the desirable education and experience necessary for the position. The job title on the description is "park ranger." The position entailed duties surrounding park security and general labor. The job description set forth that an employee of this class is under the direct supervision of the parks supervisor in the building and street tree maintenance section. The City of Everett states Stoops was employed to patrol its parks, checking for persons violating park laws, primarily relating to use of alcohol and vandalism, and to maintain surveillance of park areas and facilities during designated hours.

The ordinance authorized the appointment of "special policemen" upon certain requirements, terms, and conditions. Of importance to this case is Section 4, entitled "Limitation of Authority," which states as follows:

> A special policeman appointed pursuant to this ordinance shall have the same authority as regular police officers of the City of Everett, which police authority shall be *limited* as follows:
>
> (a) The territorial authority of such policeman shall be limited to the property on which the employer's business is located and public streets adjacent thereto.
>
> (b) The special policeman's authority shall be limited to the assigned hours such policeman is employed for his employer.
>
> (c) The above limitations of a special policeman's authority may only be extended to other times and places

upon written authorization of the Chief of Police, or his designee.

(Emphasis added.)

The ordinance provided that a uniform *similar* to that of a "regular policeman" could *not* be worn, so as to be misleading or confusing, a fact Stoops concedes. His supervisor testified on his behalf at the administrative hearing. He acknowledged his memory was not perfect, but said that employees such as Stoops could only detain, not arrest, individuals. Stoops did not go out on patrol of city streets to issue traffic citations, nor was he dispatched to complaints outside the park. Stoops did not carry a gun, nor was one ever issued to him. He used parks department vehicles in his work. Stoops was paid a full-time salary, which was less than that of a police officer, and his classification carried on the City of Everett's books was "general administration," not police or fire, which were classified under "public safety." The supervisor could not remember if this class of employees was required to submit to a physical examination, and testified that these employees received only one to one and a half hours of training for the position.

Stoops claims he was a "law enforcement officer" in 1975, within the definition of former RCW 41.26.030(3) due to his employment in the position and claims this employment entitles him to membership in the more beneficial LEOFF Plan I. Former RCW 41.26.030(3), in effect at the time Stoops was hired, provided the LEOFF definition of "law enforcement officer" for city police officers as follows:

(3) "Law enforcement officer" means any person who is serving on a full time, fully compensated basis as a . . . city police officer . . . with the following qualifications:

. . . .

(c) Only such full time commissioned law enforcement personnel as have been appointed to offices, positions, or ranks in the police department which have been specifically created or otherwise expressly provided for and designated by city

charter provision or by ordinance enacted by the legislative body of the city shall be considered city police officers[.]

Stoops claims that he meets the definition of "law enforcement officer" based on several alleged facts: (1) his position was created by ordinance, giving him the same authority as regular police officers; (2) he was under the supervision of the police department and was issued uniforms, handcuffs, mace, a radio, and a parks department vehicle; (3) he could personally decide whether to carry a firearm; (4) he believes he received four to six weeks of training for the position; (5) he claims he took a physical examination similar to the one he took several years later when he entered the LEOFF II plan; (6) and that he was not told of any limitation on his power to arrest, and in fact that during his tenure he was "instructed" to make felony arrests for burglaries, property vandalism, malicious mischief, marijuana and alcohol violations, and fights. He explained that when making arrests, the special police officers would contact the Everett police dispatcher via radio and have a patrol car sent to his or her location. The special police officer would then deliver the detainee to the patrol officer. The patrol officer would then transport the individual to the police station.

Special police officers were required to keep statistics, as do the regular police officers, on items such as people contacted, ages for alcohol violations, types of vandalism, estimates of vandalism damage, and problems at special events. Stoops said he also performed routine tasks such as locking gates at closing time and checking the security of buildings and restrooms.

Stoops acknowledges the primary duty of the special police officer was to patrol the parks in Everett, but asserts that his authority, pursuant to commission, extended beyond the limits of the parks. He gave examples which included: (1) that he was issued "special police" credentials and a badge; (2) that he once helped make a driving while intoxicated arrest while he was not on duty or in a city park; (3) that he assisted in securing the federal building

when there was an explosion there; (4) that he rode with regular patrol officers to gain experience; and (5) that one time he was sent to look for a homicide witness off of city property.

■ We apply the usual standard of review for a decision under the Administrative Procedure Act (APA). The function of this court is to review the record and decision of the Director, not that of the superior court.[1]

Stoops claims he was a law enforcement officer as a matter of law and as defined in former RCW 41.26.030(3). In our review of strictly legal issues in an administrative appeal, this court may substitute its judgment for that of the agency if the agency's interpretations or statement of the law is incorrect.[2] If there is a question as to statutory construction, and the statute is not clear and unambiguous, the interpretation of the agency charged with administering the statute is an important factor to be used by a court in its interpretation of the meaning of the statute.[3] As DRS is charged with the administration of the statute at issue here, its construction is entitled to weight.[4]

Stoops claims the language of the statute is unambiguous and should be given effect exactly as written, and therefore the other rules of statutory construction do not apply. He claims this court should not give any deference to construction of a statutory provision by the agency, unless the panel finds the statute ambiguous.

■ A statute is not ambiguous unless it is susceptible to

---

[1]RCW 34.05.558; *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402-03, 858 P.2d 494 (1993).

[2]*Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982).

[3]*See Weyerhaeuser Co. v. Department of Ecology*, 86 Wn.2d 310, 315, 545 P.2d 5 (1976).

[4]*See City of Bellevue v. International Ass'n of Fire Fighters, Local 1604*, 119 Wn.2d 373, 382, 831 P.2d 738 (1992); *Public Sch. Employees v. Public Employment Relations Comm'n*, 77 Wn. App. 741, 745, 893 P.2d 1132 (1995).

more than one meaning.[5] Stoops claims there are "uncontradicted" facts which establish that he meets the requirements of former RCW 41.26.030(3), "law enforcement officer." However, it is evident that the definition of "law enforcement officer" in the statute, using the terms "full-time," "paid," "fully compensated," "city police officers," and "commission," have been construed differently by the parties and even by officials in the DRS. On its face, the statute is not clear and unambiguous as Stoops argues to the court.

 On review, this court weighs all the evidence in the record and applies it to the statute to determine if the Director of DRS erred in concluding that Stoops was not a law enforcement officer while employed by the City of Everett.[6]

Stoops' argument ignores any interpretation other than his own of the description of the job in Everett, the duties performed, the compensation, the length of employment, the limitations placed on the commission, and the arrest authority he possessed. There was considerable conflicting evidence to apply to the definition in the statute and Stoops' claim necessarily fails.

The Washington State Supreme Court addressed similar, yet not identical, issues in two cases.[7] Based on the facts of each, the court reached different conclusions. A review of those cases is instructional because the facts of the instant case fall somewhere between them.

---

[5]*Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994).

[6]Appellate review of factual findings requires weighing the findings against all the evidence presented. "A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court is left with the definite and firm conviction that a mistake has been committed based on the entire record; substantial evidence, similarly, is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises." *See Dana's Housekeeping, Inc. v. Department of Labor & Indus.*, 76 Wn. App. 600, 605, 886 P.2d 1147 (1995) (citing *Peter M. Black Real Estate Co. v. Department of Labor & Indus.*, 70 Wn. App. 482, 487, 854 P.2d 46 (1993)).

[7]*See Beggs v. City of Pasco*, 93 Wn.2d 682, 611 P.2d 1252 (1980); *Yakima County Deputy Sheriff's Ass'n v. Board of Comm'rs*, 111 Wn.2d 854, 765 P.2d 1297 (1989).

In *Beggs v. City of Pasco*,[8] the issue was whether the matron-clerks or matron-dispatchers of the City of Pasco were city police officers under the LEOFF definition of "law enforcement officer." Relying on the fact that the women were (1) regular, (2) full-time personnel of a city police department who were (3) appointed to positions in the department (4) which were specifically created or designated by city charter provision or ordinance by the city's legislative body, the court found that the Pasco Civil Service Commission had the power, and did specifically designate to the position(s) the title of law enforcement officer. In addition, because the positions were budgeted under the police department, and designated as police officers, they met the statutory requirement.

Nine years later in *Yakima County Deputy Sheriff's Association v. Board of Commissioners*,[9] the court held that security personnel at the Yakima County jail did not qualify as "uniformed personnel" under the statutes, even considering that the terms "uniformed personnel" and "law enforcement officers" were often equated. The court reviewed the record and found that the security officers did not meet the statutory requirements because: (1) they did not serve as full-time deputy sheriffs; (2) they did not receive the same pay; and (3) they were subject to a different civil service examination. The court in the *Yakima County Deputy Sheriff's Association* case also pointed out that the issue in *Beggs* was whether police matrons, who met all of the statutory requirements of a police officer, were improperly denied coverage in the only LEOFF retirement system then in existence. Moreover, unlike the Yakima security officers, the Pasco matrons were fully trained police officers, able to perform all of the duties required of a police officer. The security officers in *Yakima County Deputy Sheriff's Association*, despite some overlapping of skills, were not qualified to perform all of the duties of a deputy sheriff and did not qualify as "uniformed personnel" for purposes of RCW 41.56.430-.495, especially

[8] 93 Wn.2d 682, 611 P.2d 1252 (1980).

[9] 111 Wn.2d 854, 765 P.2d 1297 (1989).

considering the LEOFF definitions found in RCW 41.26.030(3).

After a full review of the record, we determine that the decision of the Director of the DRS is correct.[10] Although based on conflicting evidence and testimony, there is substantial evidence to support the Director's findings. Stoops' specific challenges to four of the findings fail scrutiny.[11]

There are clear distinctions between special police officers and regular police officers in many other areas, including: firearms, uniforms, pay, commission (limited) and duties. The facts here are considerably more similar to those in the *Yakima County Deputy Sheriff's Association* case than to those in *Beggs*. The Director properly com-

---

[10]*See Norway Hill Preservation & Protection Ass'n v. King County Council*, 87 Wn.2d 267, 552 P.2d 674 (1976); RCW 34.05.570(3)(e).

[11]Stoops' commission was limited to violations centering around the City of Everett's park code. His own witness indicated that the commission was limited, and the ordinance, the job description, and the affidavit of the CETA coordinator for the program support this view. While there may have been times when the park rangers detained people beyond the parks, the authority was specific to park property. And although there is conflicting evidence as to which department supervised these special police officers, the job description and the facts clearly point to the Everett Parks Department.

Stoops' arrest authority and police powers were limited to detention in the parks during working hours, and to calling a police officer if citation or arrest was appropriate. This testimony is consistent with the original job description and the affidavit of the coordinator of the position. Although Stoops testified he had full arrest authority, there is evidence that park rangers did not have full arrest authority except possibly in exceptional circumstances where they were asked to assist commissioned police officers.

There was testimony that the training for this position was minimal, lasting from one-half to one hour, consisting of defense tactics, anger confrontation, and self-protection. Although Stoops testified differently, there is evidence to support the conclusion that only minimal training was available to the special police officers hired to be park rangers. The quantity and quality of training available to police officers who encounter deadly force was not available to Stoops or other CETA hires.

Contrary to Stoops' claim, there was no physical examination requirement similar to the one for entry into the LEOFF system as there was when he later began working as a police patrolman. The job description, personnel records, and the coordinator's affidavit do not indicate or discuss any physical examination requirement. Stoops' claim is purely conjecture and he brought forth no evidence to corroborate his claim. In fact, his own declaration belies his belief there might have been a physical examination requirement. He declared that the City of Everett did *not* require a physical examination prior to his employment in 1975, but because he passed the exam in 1978, he could have passed it in 1975.

pared Stoops' position to that of the Everett police officers in a manner consistent with the process the court used in the *Yakima County Deputy Sheriff's Association* case. Stoops failed to prove that his position with the City of Everett met the definition of "law enforcement officer" found in RCW 41.26.030(3).

The decision is affirmed.

BAKER, C.J., and ELLINGTON, J., concur.