[No. 31810-5-II.   Division Two.   May 24, 2005.]

KENNETH R. TUCKER, *Appellant*, v. THE DEPARTMENT OF
RETIREMENT SYSTEMS, *Respondent*.

*Wayne L. Williams* (of *Williams Wyckoff & Ostrander, P.L.L.C.*), for appellant.

*Robert M. McKenna, Attorney General,* and *Anne E. Hall, Assistant,* for respondent.

¶1 VAN DEREN, J. — Kenneth Tucker claims that the Department of Retirement Systems (DRS) and the superior court erroneously denied his request to retroactively transfer his retirement benefits from the Law Enforcement Officers' and Fire Fighters' (LEOFF) Plan 2 to LEOFF Plan 1. He argues that DRS erred in finding that in 1975: (1) he failed to satisfy the medical and health requirements of former chapter 41.26 RCW; and (2) he was not a fire fighter as defined under former RCW 41.26.030 (1974).[1] We disagree and affirm.

## FACTS

¶2 In 1975, the Pierce County Fire Marshal (Fire Marshal) hired 15 fire fighter helpers under a federal grant through the Comprehensive Employment and Training Act of 1973 (CETA).[2] The Fire Marshal assigned three people, including Tucker, to be fire fighter helpers at Pierce County Fire Protection District No. 6 (Fire District No. 6). The fire fighter helpers were enrolled in the state Public Employees' Retirement System (PERS) as employees of Pierce County.

¶3 The Fire Marshal's office did not have fire fighting equipment or respond to fires; rather its focus was fire prevention and inspection programs on behalf of the county. Fire District No. 6 was a fully operational fire department that responded to fires and other appropriate emergencies.

---

[1] LAWS OF 1974, 1st Ex. Sess. ch 120, § 1.

[2] 29 U.S.C. §§ 801-992 (1976 ed. Supp. V). CETA was repealed in 1982. Pub. L. No. 97-300, 96 Stat. 1324 (1982).

Fire District No. 6 was funded through county property taxes. In 1975, Fire District No. 6 employed six paid fire fighters who were assisted by volunteer fire fighters.

¶4 The Fire Marshal applied for and received CETA money to employ and train fire fighter helpers. Before assigning these employees, the Fire Marshal contacted the local office of the fire fighters' union, International Association of Fire Fighters (IAFF), the exclusive bargaining agency for fire district employees covered by LEOFF. The Fire Marshall asked the IAFF for permission to place the CETA-funded fire fighter helpers with various fire districts, including Fire District No. 6. The IAFF agreed to the assignment of the fire fighter helpers; however, the fire fighter helpers were not considered eligible for LEOFF membership and were not offered union membership.

¶5 The fire fighter helpers all received their checks from Pierce County through the Fire Marshal, who controlled their payroll and personnel management. The Fire Marshal wrote a letter to LEOFF, with a copy to all of the fire districts, emphasizing his office's control of the fire fighter helpers. In addition, the Fire Marshal wrote a letter to Fire District No. 1 that was copied to the LEOFF administrator that stated: "[I]n the event a C.E.T.A. employee is permanently employed by a fire district, it is expected that the fire chief involved will immediately notify LEFF [sic] of the change in employment status." Admin. R. (AR) at 191.[3] The fire districts directly supervised the fire fighter helpers in their daily jobs.

¶6 As a CETA fire fighter helper, Tucker worked alongside the fire fighters employed by Fire District No. 6, responding to fire calls and staying current with drills. He wore a uniform and was generally treated as a peer by the fire fighters. But Tucker was paid less than the fire fighters and had a less flexible schedule.

¶7 In August 1975, Tucker left his CETA fire fighter helper position and became a dispatcher with Pierce

---

[3] Nothing in the record indicates that any of the fire districts disagreed with this letter's characterization of the fire fighter helpers' employment status.

County law enforcement. Then, in January 1979, Fire District No. 6 hired Tucker as a "[p]robationary [f]irefighter [sic]" AR at 6. In the probationary position, Tucker enrolled in LEOFF Plan 2 and completed the medical and health requirements for LEOFF members. Two months later, Tucker became a Deputy Sheriff for Pierce County. He remained a LEOFF Plan 2 member in this law enforcement position.

¶8 In 1984, Tucker inquired about transferring his LEOFF membership from Plan 2 to Plan 1 based on his work as a CETA fire fighter helper in 1975. DRS responded that he was properly enrolled in LEOFF Plan 2.

¶9 In 2001, with counsel, Tucker again sought to retroactively transfer membership to LEOFF Plan 1. After DRS denied Tucker's request, he appealed to the DRS director. The DRS Final Order concluded that he was ineligible for LEOFF Plan 1 for two independent reasons: (1) In 1975 he did not meet former chapter 41.26 RCW's minimum medical and health standards and (2) he did not satisfy former RCW 41.26.030(4)'s definition of a fire fighter because he did not have an employment relationship with a fire department in 1975.

¶10 Tucker appealed the DRS Final Order to the superior court, which affirmed DRS. He now appeals to this court.

## ANALYSIS

¶11 The LEOFF retirement system was created in 1969 as a method of financing a pension plan that provides death, disability, and retirement benefits for law enforcement and fire fighter personnel. RCW 41.26.020, .030(16). The legislature later amended LEOFF by creating LEOFF Plan 2 for persons establishing membership in the retirement system *after* October 1, 1977. RCW 41.26.030(28), (29). "LEOFF Plan 2 is a less generous retirement system than LEOFF Plan 1." *City of Pasco v. Dep't of Ret. Sys.*, 110 Wn. App. 582, 587 n.6, 42 P.3d 992 (2002). The legislature

has charged DRS with the authority to decide whether a person is eligible for LEOFF membership. *City of Pasco*, 110 Wn. App. at 587.

■ ¶12 We review a final agency order under RCW 34.05.570(3). The party challenging an agency's action must prove the decision's invalidity; our review is limited to the record before the agency. RCW 34.05.570(1)(a), .558; *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 587, 90 P.3d 659 (2004). We may grant relief to the petitioner based on an agency's erroneous interpretation of the law or if an agency's decision is arbitrary or capricious. *Pub. Util. Dist. No. 1 of Pend Oreille County v. Dep't of Ecology*, 146 Wn.2d 778, 790, 51 P.3d 744 (2002). If the appellant does not assign error to the agency's findings of fact in the final order, these facts are verities on appeal.[4] *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 407, 858 P.2d 494 (1993).

■ ■ ¶13 We review a challenge to an agency's statutory interpretation and legal conclusions de novo under the error of law standard. *Bond v. Dep't of Soc. & Health Servs.*, 111 Wn. App. 566, 571-72, 45 P.3d 1087 (2002). We "give substantial weight to an agency's interpretation of the law it administers"; however, "the agency's interpretation is not binding." *City of Pasco*, 110 Wn. App. at 587; *see also Pub. Util. Dist. No. 1 of Pend Oreille County*, 146 Wn.2d at 790 ("[I]n the case of an ambiguous statute which falls within the agency's expertise, the agency's interpretation of the statute is accorded great weight, provided it does not conflict with the statute.").

■ ¶14 We evaluate a statute's plain language to determine legislative intent. *Campbell v. Dep't of Soc. & Health Servs.*, 150 Wn.2d 881, 894, 83 P.3d 999 (2004). We examine the statute as a whole; our statutory interpretation must

---

[4] Tucker specifically challenges only a portion of finding of fact number 9 ("Pierce County did not employ firefighters [sic] in 1975.") AR at 3; however, his brief correctly notes that his specific challenges to the Final Order's conclusions of law involve mixed issues of law and fact. Although Tucker's appellate brief is not ideal practice, DRS' broad assertion that the facts are verities on appeal is an unpersuasive argument.

not create an absurd result. *Pub. Util. Dist. No. 1 of Pend Oreille County*, 146 Wn.2d at 791; *Shurtliff v. Dep't of Ret. Sys.*, 103 Wn. App. 815, 825, 15 P.3d 164 (2000).

## I. Requirements for LEOFF 1 Eligibility

¶15 Former RCW 41.26.045 (1974)[5] required satisfaction of minimum medical and health standards by fire fighters. In 1975, the period when Tucker was employed as a fire fighter helper, former RCW 41.26.030(4) defined a fire fighter as:

> (a) any person who is serving on a full time, fully compensated basis as a member of a fire department of an employer and who is serving in a position which requires passing a civil service examination for fire fighter, and who is actively employed as such;
>
> (b) anyone who is actively employed as a full time fire fighter where the fire department does not have a civil service examination.

¶16 Former RCW 41.26.030(2) (1974)[6] defined an employer as "the legislative authority of any city, town, county, or district or the elected officials of any municipal corporation that employs any law enforcement officer and/or fire fighter, any authorized association of such municipalities."

¶17 Thus, in 1975, the requirements for LEOFF Plan 1 membership were: (1) a full time and fully compensated fire fighter (2) employed as a member of a fire department on or after March 1, 1970 and (3) satisfying minimum medical and health standards.[7]

¶18 Washington case law does not discuss RCW 41-.26.030(4)'s elements in detail. But *International Ass'n of Fire Fighters Local 3266 v. Department of Retirement Systems* accurately states some of the elements as "a

---

[5] Laws of 1974, 1st Ex. Sess. ch. 120, § 8.

[6] Laws of 1974, 1st Ex. Sess. ch. 120, § 1.

[7] The DRS Final Order accurately stated that chapter 41.26 RCW's definitions of "member" and "employee" are not helpful here because they merely refer to the fire fighter definition.

full-time fire fighter and a member of a fire department." 97 Wn. App. 715, 719, 987 P.2d 115 (1999). In discussing the definition of a fire fighter, the court also relied on DRS' promulgated rules defining fire fighters:

> (2) Fire fighters. You are a fire fighter if you are employed in a uniformed fire fighter position by an employer on a full-time, fully compensated basis, and as a consequence of your employment, you have the legal authority and responsibility to direct or perform fire protection activities that are required for and directly concerned with preventing, controlling or extinguishing fires.

*Int'l Ass'n of Fire Fighters,* 97 Wn. App. at 719 (quoting former WAC 415-104-225 (1995)).

¶19 The parties do not dispute that Tucker had to satisfy all of the statutory elements to be covered by the LEOFF Plan 1. It is also undisputed that Tucker was not required to take a civil service examination, because former RCW 41.26.030(4)(b) incorporates the elements of former RCW 41.26.030(4)(a). Rather, Tucker challenges DRS' interpretation and application of these elements.[8]

¶20 Tucker contends that DRS erred in finding him ineligible for LEOFF Plan 1 membership because he satisfied both Plan 1's medical and health requirement and the statutory definition of a fire fighter under former RCW 41.26.030. Tucker asserts that DRS misinterpreted former RCW 41.26.030 to require that he was "*employed by* a Fire Department" without considering the "membership" language. Br. of Appellant at 15 (emphasis added). *See, e.g., Int'l Ass'n of Fire Fighters,* 97 Wn. App. at 719.

II. Minimum Medical and Health Standards

■ ¶21 Tucker argues that he satisfied LEOFF Plan 1's medical and health standards because his 1979 medical report satisfied LEOFF Plan 2 and "[t]he totality of his

---

[8] The DRS Final Order did not fully evaluate whether Tucker was full time and fully compensated because he failed to satisfy additional membership requirements. We do not review this issue for similar reasons.

health history and condition in 1979 allows us to conclude he also met those standards *four years earlier* [in 1975]." Br. of Appellant at 33 (emphasis added). Tucker cites *City of Pasco* to support his contention. 110 Wn. App. at 587.

¶22 But the DRS Final Order correctly dismissed Tucker's argument and emphasized that he provided no evidence of a medical examination in 1975. The Final Order distinguished Tucker's situation from *City of Pasco* by stating: "Important aspects of Pasco are (1) that there was a full record of the fire fighter's examination and physical condition from his employment in 1974; . . . and (2) that between then and the time that he applied again, only the medical opinion about the effect of his condition changed." AR at 16.

¶23 Tucker also argues that DRS should be equitably estopped from denying him membership in LEOFF Plan 1 because his employer failed to ensure that he satisfied LEOFF's medical requirements for membership. But equitable estoppel requires that his employer make an inconsistent claim. *City of Kennewick v. Bd. for Volunteer Firefighters*, 85 Wn. App. 366, 370, 933 P.2d 423 (1997). Here, the record shows that both the Fire Marshal and Fire District No. 6 understood that when Tucker was a fire fighter helper, he was enrolled in the PERS retirement system that did not require a medical evaluation. Both entities maintain that position today. Further, Tucker did not protest his PERS status when he was employed as a fire fighter helper. Only when Fire District No. 6 hired him as a probationary fire fighter in 1979 did he acquire the required medical evaluation for membership in LEOFF Plan 2.

¶24 Tucker's arguments that he satisfied LEOFF Plan 1's medical and health standards under former RCW 41.26.045 are unpersuasive and his failure to meet these standards is fatal to his transfer request. We hold that DRS did not err in denying Tucker's request for LEOFF Plan 1 membership based on his failure to satisfy this essential eligibility requirement.

### III. Fire Fighter Definition

¶25 Alternatively, Tucker contends that the DRS Final Order erred in finding that he was not a fire fighter in 1975 under former RCW 41.26.030(4) because the Fire Marshal is a Pierce County entity and his duties were similar to fire fighters. He asserts that he satisfied the employer and fire fighter definitions under former RCW 41.26.030(2), (4). Because the DRS Final Order closely examined former RCW 41.26.030 and because both parties vigorously dispute DRS' interpretation of this section on appeal, we review Tucker's arguments.

■ ■ ¶26 The DRS Final Order found Tucker ineligible for LEOFF Plan 1 membership because he did not have a required employment relationship with a fire department under former RCW 41.26.030(4).[9] Because chapter 41.26 RCW has not defined "fire department" for the time periods here and because former RCW 41.26.030(4)'s fire fighter definition is subject to more than one interpretation, we defer to the DRS' expertise.[10] Thus, Tucker must demonstrate that DRS erred in its interpretation of former RCW 41.26.030(4)(a) and (b) by requiring Tucker to demonstrate that he had an employment relationship with a fire department in 1975.

■ ¶27 DRS' application and interpretation of former RCW 41.26.030 relied on significant evidence that (1) neither the Fire Marshal nor Fire District No. 6 considered Tucker's CETA-funded fire fighter helper position eligible for LEOFF membership; and (2) Tucker was not a member of a fire department because the Fire Marshal hired and

---

[9] DRS did not evaluate Tucker's duties as a fire fighter helper because, "[t]he Department concedes that in 1975 Mr. Tucker performed the same duties as the firefighters [sic] employed by PCFPD # 6 [Fire District No. 6]." AR at 10.

[10] Arguably, former RCW 41.26.030(4)'s plain language is unambiguous and does not require further interpretation. *See, e.g., City of Port Orchard v. Dep't of Ret. Sys.*, 112 Wn. App. 811, 813, 50 P.3d 682 (2002). But given that DRS and Tucker consistently interpret the statute differently and chapter 41.26 RCW's failure to define "fire department," we defer to the agency's interpretation. *See Stoops v. Dep't of Ret. Sys.*, 91 Wn. App. 898, 905, 963 P.2d 189 (1998).

controlled Tucker's position, *not* Fire District No. 6, a fully operational fire department.

¶28 The labor contract between the IAFF and Fire District No. 6 governed fire fighters' membership in LEOFF. Significantly, the Fire Marshal had to request permission from this union to place the CETA fire fighter helpers at Fire District No. 6. But even though the IAFF approved their placement as CETA employees, the labor contract did not include the fire fighter helpers as LEOFF eligible or as union members. Consequently, when the Fire Marshal hired Tucker as a fire fighter helper, Tucker enrolled in PERS. And when Fire District No. 6 hired Tucker as a probationary fire fighter in 1979, consistent with the IAFF labor contract, Tucker entered the LEOFF Plan 2 retirement system.

¶29 The Fire Marshal did not have fire fighting equipment and did not respond to fires, unlike Fire District No. 6, which was an operating, property-tax-supported entity. The Fire Marshal hired Tucker and others as fire fighter helpers with CETA funds that supported *temporary* fire fighter helpers *who were training* to be fire fighters, including many individuals with no fire fighting experience. Accordingly, Fire District No. 6 viewed the CETA-funded fire fighter helpers as temporary, even though, as the DRS Final Order acknowledged, Tucker had "personal experience" with Fire District No. 6 and was "treated as a full member" of this fire district. AR at 14. Furthermore, the CETA-funded fire fighter helpers were paid less than the fire fighters employed by Fire District No. 6.

¶30 The Fire Marshal wrote to the LEOFF administrator and copied the letter to Fire District No. 6, indicating that the Fire Marshal had "complete control of these [CETA] employees" and that the Fire Marshal would collect and issue the CETA employees' pay checks and maintain their time sheets. AR at 189. Unlike the fire fighter positions paid by Fire District No. 6, the fire fighter helpers' employment classification existed only under Pierce County and was not a classification within fire districts.

¶31 Tucker argues that WAC 415-104-225(2) references the nondispositive nature of a fire fighter's title and that former chapter 41.26 RCW's statutory scheme implies that the term "fire fighter" be defined broadly. He emphasizes that when he was a fire fighter helper, CETA employees could be covered by a retirement plan like LEOFF. Tucker also asserts that he had an employer/employee relationship with Fire District No. 6 based on factors used in workers' compensation cases; however, Tucker fails to recognize the evidence before DRS and provides no legal authority for the applicability of these factors to LEOFF's statutory membership requirements.

¶32 But DRS concluded that the evidence demonstrated his *employment* was with the Fire Marshal, *not* Fire District No. 6:

> The fire station operated daily in a manner that did not emphasize the differences, yet there were differences between the fire fighter helper positions and the other paid firefighter [sic] positions. Taking the evidence together regarding the fire fighter helpers in Pierce County in 1975, *the situation would be more accurately characterized as one where one entity employed these workers, then loaned or assigned out their services to another entity.* The *weight of the evidence supports an employment relationship between the fire fighter helpers and the Pierce County Fire Marshall's Office*, which was not a fire department, more strongly than it does an employment relationship between the fire fighter helpers and the fire protection districts to which they were assigned. Therefore they were not employed by a fire department. *Because they were not employed by a fire department, the fire fighter helpers were not "fire fighters" as the LEOFF system defines them, and so they were not eligible for LEOFF membership.*

AR at 14-15 (emphasis added).[11]

---

[11] This conclusion is consistent with cases in which LEOFF membership requests were based on positions with duties similar to those of a LEOFF police officer, but which did not satisfy RCW 41.26.030(3). *See Auto. Drivers & Demonstrators Union Local No. 882 v. Dep't of Ret. Sys.*, 92 Wn.2d 415, 422, 598 P.2d 379 (1979) (Port of Seattle police officers were municipal employees not encompassed under RCW 41.26.030(3)'s definition of a law enforcement officer); *Stoops*, 91 Wn. App. at 903 ("special policeman" *funded by CETA grant*, with *different job*

¶33 Tucker's contentions do not rebut DRS' conclusion, based on the evidence, that none of the relevant entities considered his CETA position for LEOFF membership and that Fire District 6, a fully operational fire department, did not employ fire fighter helpers. We do not review the credibility of witness testimony and we defer to DRS' interpretation of the sections at issue under chapter 41.26 RCW. Tucker has failed to demonstrate that DRS' Final Order erroneously interpreted or applied former RCW 41.26.030.

¶34 Tucker failed two independent eligibility requirements for LEOFF Plan 1. First, he failed Plan 1's medical and health requirements. Second, the record demonstrates that Fire District No. 6 did not consider Tucker's CETA-funded fire fighter helper position a LEOFF position and Tucker cannot rebut the significance of his CETA-funded position being administrated by the Fire Marshal. Thus, we affirm the DRS Final order denying Tucker membership in the LEOFF Plan 1 retirement program.[12]

QUINN-BRINTNALL, C.J., and HUNT, J., concur.

---

classification and funding scheme, and different duties than a traditional law enforcement officer did not satisfy RCW 41.26.030(3)'s definition of a law enforcement officer); see also Yakima County Deputy Sheriff's Ass'n v. Bd. of Comm'rs for Yakima County, 111 Wn.2d 854, 765 P.2d 1297 (1989) (denying LEOFF membership to security personnel when they received less pay than law enforcement officers and were not qualified to perform all of the same duties as the officers).

[12] Tucker also seeks attorney fees under RCW 4.84.350, arguing that he will prevail if his appeal results in a reversal of the DRS Final Order. Because we affirm DRS' Final Order, we deny Tucker's request for attorney fees.