# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| FRANK SHAW, | No.  47166-3-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF RETIREMENT SERVICES, | PUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — Frank Shaw appeals the superior court's affirmation of a Department of Retirement System's (DRS) final order denying his claim for duty disability benefits pursuant to RCW 41.26.470(7).  Shaw argues that the presiding officer erred when she wrongfully required the duty-related incident to be the "sole cause" of Shaw's disability.  The Department of Retirement Services (Department) concedes that the presiding officer applied the incorrect legal test and requests that we remand to DRS to resolve the remaining factual and legal issues.  Shaw requests that we find Shaw entitled to on-duty disability benefits.  We accept the Department's concession that the presiding officer applied the improper legal test and remand to DRS to properly determine Shaw's eligibility for duty disability benefits.

FACTS

Frank Shaw was abused as a child.  As a result, Shaw experienced depression and anger management issues.

In September 1989, Shaw became a member of the statewide Law Enforcement Officers' and Fire Fighters' Retirement System (LEOFF) when he was first employed as a fire

fighter/paramedic with the City of Ellensburg Fire Department. He remained an active, contributing member of LEOFF Plan 2 until he resigned his employment as a fire fighter/paramedic with Kittitas Valley Fire and Rescue in October 2007. Shortly thereafter, Shaw applied to DRS for LEOFF Plan 2 disability retirement on the basis that he suffered from depression and stress, which caused an inability to perform his job duties.

Shaw's application was initially denied, but upon additional internal review his claim for disability retirement was approved on September 6, 2008. The September 2008 approval granted Shaw *non-duty* disability retirement, citing a medical opinion that Shaw was incapacitated for continued employment as a fire fighter/paramedic due to depression and anger management issues.

Shaw petitioned for internal review of his claim, arguing he was eligible for *duty-related* disability benefits under RCW 41.26.470. DRS denied his petition in August 2009, concluding he had not established that his disability was work related. On April 2, 2010, Shaw moved for reconsideration, filing additional documentation. Shaw asked DRS to consider him disabled on the basis of previously undiagnosed post-traumatic stress disorder (PTSD) stemming from his childhood abuse, as first diagnosed in February 2010 by his treating psychiatrist. Shaw claimed his PTSD from the abuse was aggravated by specific duty-related incidents at his job including: (1) a groundless accusation of inappropriate nonphysical contact with a teenaged girl while on duty at the fire department, (2) a false accusation of an extramarital affair while on duty, (3) a verbal altercation with medical staff at Harborview Hospital during transit of an injured patient, and (4) an additional incident while on duty at the fire station that ultimately led to him leaving

his job. On January 31, 2011, DRS again denied Shaw's claim, affirming that his mental disability was not incurred in the line of duty.

Shaw filed a notice of appeal with DRS and requested a hearing to challenge DRS's January 31 denial. After a prehearing conference, the parties agreed to the following statement of issue for the purpose of preparing and presenting their cases:

> In granting Mr. Frank Shaw non-duty disability benefits under WAC 415-104-485, the Department determined that Mr. Shaw had
>
> (i) incurred a mental disability;
> (ii) become totally incapacitated for continued employment in a LEOFF eligible position; and
> (iii) separated from his LEOFF-eligible position due to the disability.
>
> The only issue raised in this appeal is whether the foregoing mental disability was "incurred in the line of duty," such that Mr. Shaw is eligible for duty disability benefits under RCW 41.26.470 and WAC 415-104-480.

Administrative Record (AR) at 5-6.

Shaw argued that he was entitled to duty disability benefits because specific duty-related incidents aggravated his preexisting condition of PTSD. Shaw and the Department offered different interpretations of what is meant by the "line of duty" requirement for duty disability benefits pursuant to RCW 41.26.470.

Ultimately, the presiding officer issued a final order rejecting Shaw's claim. The analysis of the final order begins, "[T]he claim as presented is not sufficiently supported by law that can be applied in this forum. For the following dispositive analysis it is not necessary to address or determine how his disabling condition(s) came about, or what his disabling condition(s) may have been." AR at 6. The final order made no findings or conclusions as to Shaw's mental disability, his employment, or any causal connection between the two.

The final order noted Shaw's exclusive reliance on workers' compensation case law to support his claim, particularly what the final order referred to as the "aggravation rule." AR at 10. The presiding officer concluded DRS had no authority to incorporate workers' compensation law in general, or the aggravation rule in particular, to LEOFF disability retirement determinations.

Finally, the final order stated:

> LEOFF retirement for mental disability in the line of duty [may] be granted only upon a persuasive showing that a member's disabling condition arose naturally and proximately from performance of duties particular to LEOFF employment, that is, that performance of those required or particularly authorized duties was the sole cause of a particular disabling condition.

AR at 11.

Shaw petitioned the superior court to review the final order, arguing that the order misinterpreted RCW 41.26.470. The superior court affirmed the final order. Shaw appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

We review a final agency order under RCW 34.05.570(3). In reviewing an administrative action, we sit in the same position as the trial court and apply the Administrative Procedure Act[1] standards directly to the agency's administrative record. *Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus.*, 112 Wn. App. 291, 296, 49 P.3d 135 (2002). The party challenging an agency's action must prove the decision's invalidity; our review is limited to the record before the agency. RCW 34.05.570(1)(a); *Tucker v. Dep't of Ret. Sys.* 127 Wn. App. 700, 705, 113 P.3d 4 (2005).

---

[1] ch. 34.05 RCW.

We may grant relief based on an agency's erroneous interpretation or application of the law. RCW 34.05.570(3)(d). We review a challenge to an agency's statutory interpretation and legal conclusions de novo, giving substantial weight to an agency's interpretation of the law it administers. *Tucker*, 127 Wn. App. at 705. To determine legislative intent we evaluate a statute's plain language, and we interpret the statute to avoid absurd results. 127 Wn. App. at 705-06.

## II. CHAPTER 41.26 RCW

Chapter 41.26 RCW provides an actuarial reserve system for the payment of death, disability, and retirement benefits to law enforcement officers and firefighters and their beneficiaries. RCW 41.26.020. Benefits for persons who became members of the system prior to October 1, 1977 are governed by LEOFF Plan 1, and LEOFF Plan 2 governs benefits for members of the system on and after that date. RCW 41.26.030(21); RCW 41.26.030(22). When the legislature enacted LEOFF Plan 2 it provided a general earned disability retirement for all members "who become[] totally incapacitated for continued employment by an employer . . . ." RCW 41.26.470(1).

In 2004, the legislature enacted a new benefit specifically for LEOFF 2 members who "become disabled in the line of duty." RCW 41.26.470(7). This benefit was intended to provide more favorable federal tax status to members who leave service as a result of a line of duty disability. LEOFF Plan 1 members could obtain a similar benefit for any disability "incurred in the line of duty." RCW 41.26.120.

No. 47166-3-II

As part of DRS's implementation of chapter 41.26 RCW, DRS adopted administrative rules governing the unique aspects of administrating the LEOFF system. See WAC 415-104-015. One such regulation, WAC 415-104-480, governs duty disability benefits for LEOFF Plan 2 members and incorporates the same "incurred in the line of duty" language as used in LEOFF Plan 1. WAC 415-104-480 reads:

> (1) **Who is entitled to duty disability benefits?** Any member of LEOFF Plan 2 who the department determines has:
> (a) *Incurred a physical or mental disability in the line of duty*;
> (b) Become totally incapacitated for continued employment in a LEOFF eligible position; and
> (c) Separated from a LEOFF eligible position due to the disability.
>
> (2) **How is 'line of duty' defined?** Line of duty means any action or activity occurring in conjunction with your employment or your status as a law enforcement officer or firefighter and required or authorized by law, rule, regulations, or condition of employment or services.

WAC 415-104-480 (emphasis added).

No Washington court has interpreted the "line of duty" requirement for duty disability benefits under LEOFF Plan 2. However, Washington courts have interpreted the phrase for purposes of LEOFF Plan 1 duty disability, which we discuss more fully in the following section. *See Dillon v. Seattle Police Pension Bd.*, 82 Wn. App. 168, 916 P.2d 956 (1996), and *Woldrich v. Vancouver Police Pension Bd.*, 84 Wn. App. 387, 928 P.2d 423 (1996). Because the provisions governing LEOFF Plans 1 and 2 are statutorily separate, the interpretation of the language of one would not generally be applied to the other. But because WAC 415-104-408 incorporates the crucial "incurred in the line of duty" language used for duty disability in Plan 1, and the rule became effective eight years after *Dillon* and *Woldrich*, we agree with the presiding officer that

6

WAC 415-104-408 intended to align the standard for duty disability in LEOFF Plan 2 with the standard in LEOFF Plan 1 as interpreted and applied in *Dillon* and *Woldrich*.

### III. NATURALLY AND PROXIMATELY

Whether Shaw became disabled "in the line of duty" such that he is eligible for duty disability benefits forms the center of this dispute.[2]  Shaw argues, and the Department agrees, that the presiding officer erred by interpreting "in the line of duty" to require that the performance of duties particular to LEOFF 2 employment be the sole cause of a particular disabling condition.  Br. of Appellant at 3; Br. of Resp't at 16.  We agree and accept the Department's concession.

The standard for duty disability determinations was addressed in *Dillon*, 82 Wn. App. at 171, and *Woldrich*, 84 Wn. App. at 390.  Those cases determined that the test for whether a disability was incurred in the line of duty was whether the disability arose "naturally and proximately" from the LEOFF member's work.  *Dillon*, 82 Wn. App. at 171; *Woldrich*, 84 Wn. App. at 390.

Dillon was a police officer with the Seattle Police Department.  *Dillon*, 82 Wn. App. at 170.  The Seattle Police Pension Board (the Board) approved his non-duty disability retirement after an accidental off-duty gunshot injured his hand.  82 Wn. App. at 170.  However, within three years the Board ordered him to return to work as a patrol officer.  82 Wn. App. at 170.  Dillon felt he was incapable of performing certain critical functions of police work because of

---

[2] DRS has already determined that Shaw is eligible for disability benefits.  Shaw is seeking an additional determination that his disability was duty-related.

residual pain and dysfunction in his injured hand. 82 Wn. App. at 170. He returned to work, but his concerns caused anxiety and depression. 82 Wn. App. at 170. Ultimately, the Board decided that Dillon was mentally disabled but that the disability was not incurred in the line of duty. 82 Wn. App. at 170. Division One of our court reversed the Board's decision, holding that Dillon incurred his mental disability in the line of duty. 82 Wn. App. at 175. The *Dillon* court relied on workers compensation case law to hold that, "Dillon was required to prove that his mental disease arose 'naturally and proximately' out of his employment." 82 Wn. App. at 171.

Woldrich was a police officer for the city of Vancouver. *Woldrich*, 84 Wn. App. at 389. When he was notified that he would be demoted for disciplinary reasons, he experienced a stress reaction that evolved into a disabling psychological disorder and he never returned to work. 84 Wn. App. at 389. The Vancouver Police Pension Board granted him non-duty disability retirement. 84 Wn. App. at 390. Woldrich appealed, arguing that his mental disability was incurred in the line of duty. 84 Wn. App. at 390. We adopted *Dillon*'s reasoning, holding "[a] police officer's disability is incurred 'in the line of duty' if the disability arose as a 'natural and proximate result' of the officer's specific employment." 84 Wn. App. at 390. We held that "[u]nlike *Dillon*, Woldrich failed to meet his burden of showing that his mental disability arose as a natural consequence or incident of distinctive conditions of police work." 84 Wn. App. at 393.

Here, the presiding officer properly concluded that the "naturally and proximately" test should be used to interpret the phrase "in the line of duty" for purposes of determining Shaw's eligibility for duty-related benefits in the LEOFF Plan 2. AR at 11. However, the presiding officer improperly interpreted the "naturally and proximately" test to require that Shaw's performance of

those required or particularly authorized duties be the *sole cause* of a particular disabling condition. But a test based on the sole cause rule distorts the naturally and proximately test as defined by the case law.

To establish that a worker's condition arose "naturally" out of his employment, the worker must establish that his "particular work conditions more probably caused his disease or disease-based disability than conditions in everyday life or all employments in general; the disease or disease-based disability must be a natural incident of conditions of that worker's particular employment." *Dillon*, 82 Wn. App. at 172-73 (*quoting Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 481, 745 P.2d 1295 (1987)). To show his disease was proximately caused by his work, he must establish that he would not have contracted the disease, but for the aggravating condition of his job. 82 Wn. App. at 171-72. Nothing in either *Dillon* or *Woldrich* defines "naturally and proximately" to require the specific employment be the "sole cause" of the disability.

We accept the Department's concession, and hold that the presiding officer erred by misinterpreting the natural and proximate test to require a worker's employment be the sole cause of disability.

IV. MORE THAN MERE TEMPORAL CONNECTION REQUIRED

Shaw argues that because the language for LEOFF Plan 1 and LEOFF Plan 2 is different "one must assume the legislature intended a change in the law . . . meant to benefit the firefighters covered by the law." Br. of Appellant at 12-13. Shaw contends that the current language of RCW 41.26.470(7), "'becomes disabled in the line of duty' . . . implies only a temporal connection and includes a disability which arose 'in conjunction' with duty but was not necessarily caused by the duty itself." Br. of Appellant at 11-12. However, this court gives great

weight to an agency's interpretation of the laws it administers, and an agency charged with the administration and enforcement of a statute may interpret ambiguities within the statutory language through the rule making process. *Ass'n of Wash. Bus. v. Dep't of Revenue*, 155 Wn.2d 430, 439, 120 P.3d 46 (2005).

We reject Shaw's argument and hold that the natural and proximate test is the proper test for determining whether Shaw's disability is eligible for duty disability benefits.

## V. REMEDY

Shaw asks us to make a determination that his disability was duty-related. We deny his request.

Our function is to review the decisions of the agency, not to try the case de novo. *Tapper v. Emp't Sec. Dep't.*, 122 Wn.2d 397, 402-03, 858 P.2d 494 (1993). RCW 34.05.574(1) states, in part:

> In reviewing matters within agency discretion, the court shall limit its function to assuring that the agency has exercised its discretion in accordance with law, and shall not itself undertake to exercise the discretion that the legislature has placed in the agency. The court shall remand to the agency for modification of agency action, unless remand is impracticable or would cause unnecessary delay.

RCW 34.05.574(1).

In denying Shaw's claim, the final order stated that it was not necessary to address or determine how Shaw's disabling conditions came about or what these conditions may have been. The final order contained no factual findings regarding Shaw's mental disability, his work experiences, or the casual link between the two. Although DRS took two days of testimony from various witnesses, including several medical professionals and Shaw's former coworkers, nothing in the findings of facts or conclusions of law address any of this evidence.

10

In order to grant Shaw's duty-disability benefits claim, we would be required to review the testimony transcripts and evidence in the record de novo, and attempt to weigh the credibility of witnesses, including several medical experts. We also would need to apply agency regulations to Shaw's factual situation. Such a process exceeds the scope of our authority on review. *Hahn v. Dep't of Ret. Sys.*, 137 Wn. App. 933, 942, 155 P.3d 177 (2007).

Because DRS denied Shaw's claim as a matter of law by improperly interpreting the natural and proximate test to require that Shaw's employment be the sole cause of his disability, we remand Shaw's claim to DRS to properly apply the natural and proximate test to determine whether Shaw's mental disability was incurred in the line of duty.

ATTORNEY FEES

Shaw requests attorney fees pursuant to RCW 49.48.030. RCW 49.48.030 authorizes assessing an employee's attorney fees against an employer in a successful action to recover wages. The statute does not authorize an assessment of attorney fees against a party who is not an employer. *City of Kennewick v. Board for Volunteer Firefighters*, 85 Wn. App. 366, 370, 933 P.2d 423 (1997). DRS is not Shaw's employer, and therefore, we deny his request for attorney fees.

Shaw argues in the alternative that he is also entitled to attorney fees pursuant to RCW 4.84.340-350. RCW 4.84.350(1) states: "A court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances

11

make an award unjust."  Shaw fails to demonstrate that he meets the definition of a qualified

party under the statute.[3]  We deny his request for attorney fees on this ground as well.

_Worswick, J._
Worswick, J.

We concur:

_Johanson, C.J._
Johanson, C.J.

_Lee, J._
Lee, J.

---

[3] RCW 4.84.340 defines "qualified party" as:
(a) an individual whose net worth did not exceed one million dollars at the time the initial
petition for judicial review was filed or (b) a sole owner of an unincorporated business, or a
partnership, corporation, association, or organization whose net worth did not exceed five
million dollars at the time the initial petition for judicial review was filed, except that an
organization described in section 501(c)(3) of the federal internal revenue code of 1954 as
exempt from taxation under section 501(a) of the code and a cooperative association as defined
in section 15(a) of the agricultural marketing act (12 U.S.C. 1141J(a)), may be a party regardless
of the net worth of such organization or cooperative association.