IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WHITE WATER CONSTRUCTION, Inc., | ) ) ) | No. 37414-9-III |
| Respondent, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON EMPLOYMENT SECURITY DEPARTMENT, | ) ) ) ) | |
| Appellant. | ) ) | |

FEARING, J. — This appeal raises questions surrounding judicial review of an administrative agency's findings of fact and concerning disqualification for unemployment compensation based on alleged employee misconduct. The superior court reversed a ruling of the Employment Security Department (ESD) commissioner that granted Fred Stevens unemployment benefits. Because substantial evidence supported one of the commissioner's rulings, we reverse the superior court. Because of the lack of an explicit finding on another important issue, we remand to the ESD commissioner to enter further findings of fact.

FACTS

We borrow our facts primarily from the administrative record. We emphasize the administrative law judge's (ALJ's) and the ESD commissioner's findings of fact and conclusions of law.

Beginning on August 6, 2018, Fred Stevens worked for respondent White Water Construction, Inc. as a construction foreman. Stevens completed time sheets pursuant to White Water's payroll policy.

On August 27, 2018, Fred Stevens injured his right hand while at work. The injury required surgery. After Stevens' surgery, he required time off work, and White Water Construction placed him on Kept-on-Salary (KOS) status. KOS allowed Stevens to continue to receive full pay regardless of the hours he worked or his temporary disability status. White Water did not require Stevens, while he was on KOS, to prepare time sheets. Stevens, with White Water's knowledge, opened an industrial insurance claim with the Department of Labor & Industries (DLI).

In mid-December 2018, Fred Stevens returned to work for White Water Construction and performed light duty. He did not always work full shifts, due to medical and physical therapy appointments.

On January 7, 2019, White Water Construction, while Fred Stevens remained on light duty, directed Stevens to resume submitting time sheets, including a sheet for the previous pay period, December 24, 2018 through January 6, 2019. According to Stevens,

2

he did not understand the need to prepare time sheets because he remained on KOS while he worked light duty. Stevens attempted to clarify the procedure regarding his KOS status with his DLI case manager, but could not reach her. Stevens sought to ask White Water representatives about the direction to complete a time sheet, but neither the office manager nor the owner was present in the office. In the past, Stevens communicated with White Water's owner, Wayne Terry, via text messages. Stevens did not text Terry on this occasion.

According to Fred Stevens, when he completed the time sheet for December 24 to January 6, he was uncertain as to whether he remained on KOS, since no recent paperwork confirmed this status. Stevens also believed that White Water Construction would pay him for holidays, because, according to Stevens, Wayne Terry informed him that, "'I will pay you for the holidays.'" Administrative Record at 51, 53. Therefore, he inserted hours on the time sheet for holidays. He also incorporated time for hours he spent at physical therapy and placed those hours in parentheses. His completed time sheet read:

| Date | Description | Hrs Worked |
|---|---|---|
| 12/24 | Xmas Eve 8-2 | 6.0 (+4.0) |
| 12/25 | Xmas day | 10 |
| 12/26 | 8-5 ½ lunch | 8.5 (+1.5) |
| 12/27 | sick day pay | 10 |
| 12/31 | New Years [sic] Eve | 10 |
| 01/01 | New Years [sic] Day | 10 |
| 01/02 | | 9 (+1) |
| 01/03 | | 9 (+1) |

3

See AR at 69-70. Stevens believed that, if he provided erroneous information on his time sheet, White Water would correct the error.

Since 1984, White Water Construction had not paid employees for holidays unless they performed work on those days. At an evidentiary hearing, Wayne Terry denied telling Fred Stevens that the construction company would pay him for unworked holidays.

At 5:00 p.m. on January 9, 2019, Fred Stevens submitted his time sheet for December 24 to January 6. He expected to speak with Wayne Terry the following day about the sheet.

White Water's Office Manager, Jan Kopet, had prepared notes of when Fred Stevens arrived at and left work. Her notes reflected that Stevens worked the following hours:

| Date | Hours Mr. Steven Actually Worked |
|------|----------------------------------|
| 12/24 | 6.0 |
| 12/25 | 0 |
| 12/26 | 4.25 |
| 12/27 | 0 |
| 12/31 | 8 |
| 01/01 | 0 |
| 01/02 | 8 |
| 01/03 | 8 |

See AR at 109-10. Jan Kopet compared her notes with Fred Stevens' completed time sheet and found that the two did not match.

4

Wayne Terry and Jan Kopet concluded that Fred Stevens fabricated his time sheet. On January 10, 2019, Wayne Terry fired Fred Stevens from White Water Construction employment for falsifying the time sheet.

After his termination from employment at White Water Construction, Fred Stevens applied for unemployment compensation with ESD. ESD initially granted the application and began payments to Stevens. ESD later denied Stevens' application after determining that Stevens falsified his time sheet and the falsification constituted misconduct that disqualified him from benefits. ESD issued a written determination letter, which denied Stevens future benefits and demanded repayment of $2,690 in benefits received since January 6, 2019.

Fred Stevens appealed ESD's decision to the Office of Administrative Hearings. In response to the appeal, White Water Construction argued that Fred Stevens falsified his time sheets when he claimed hours that he had not worked for two holidays and when he claimed extra hours on work days beyond those he worked.

An administrative law judge conducted an evidentiary hearing. During the evidentiary hearing, Fred Stevens testified:

> JUDGE BEEBE: And does anything limit your ability to accept a job, such as injury, illness, or childcare?
> MR. STEVENS: No.
> JUDGE BEEBE: Are you available to work any hours that would be offered to you?
> MR. STEVENS: Yes.

AR at 32.

Wayne Terry cross-examined Stevens at the hearing:

Q: [MR. TERRY] Yeah, I, uh, would like to ask him, um, if you had questions and you were only 20 steps away from the office, why did you not ask for clarification?
A: [MR. STEVENS] I believe that would be under the hostile environment that you created, I did not feel welcome or that I could proceed. I was waiting for L&I to respond, my caseworker, to my request for a callback.

AR at 56.

Wayne Terry testified during the evidentiary hearing:

MR. TERRY: Well, he [Fred Stevens]—it shows that he worked ten hours on New Year's Eve and ten hours on New Year's Day, and he showed that he worked nine hours on the 1st and nine hours, um, uh, on the 2nd and on the 3rd, and those are all false. Um, also, on the previous time sheet, which is, uh, Supplemental Page 58, um, on the 24th—uh, correction. On the 26th, he worked 4 hours and 15 minutes and claimed 8 and a half.

AR at 38.

Following the evidentiary hearing, the ALJ affirmed ESD's decision to deny Fred Stevens unemployment compensation. The ALJ determined, in a written order, that, although Stevens was able and available to work, White Water Construction discharged him for misconduct. The ALJ further ruled that Stevens did not qualify for a waiver of the overpayment and must repay the benefits he received. Fred Stevens submitted a petition for review of the ALJ's decision with the ESD commissioner.

During the ALJ hearing, Fred Stevens did not state that he was disabled. In Stevens' petition to the ESD commissioner, however, he sought release from the duty to return benefits received, while claiming:

> Repayment of benefits received would cause an unfair hardship for me. I am now a *disabled* employee after being injured while working with this employer [White Water Construction]. I am an unemployed father who has sole custody of three teenaged children. There should be no overpayment in this case due to the financial burden this would place upon me.

AR at 136 (emphasis added). White Water Construction replied to the petition:

> Additionally, Fred makes a statement . . . where his quote states *that he is now a disabled employee after being injured while working with this employer*… That is not a valid statement.
> I [owner Wayne Terry] talked with Labor & Industries and it has never been established that he is 'disabled' from working with White Water Construction, Inc. As of June 11th, 2019, no paperwork has been received from L & I to substantiate any claim of 'disability'. They [sic] do show that he was **injured—not disabled**. Again, he was released on December 18, 2018 to be able to work without restrictions.

AR at 140 (boldface and underline in original).

The ESD commissioner issued a decision that adopted and augmented the ALJ's findings of fact and conclusions of law. The Commissioner agreed that Fred Stevens was able and available to work, but rejected the ALJ's conclusion that Stevens committed misconduct. Stevens instead, according to the commissioner, committed a mistake. The commissioner ruled that Fred Stevens was entitled to benefits and need not return any payments received. The ESD Commissioner entered the following findings of fact:

Findings of Fact Nos. 3 and 4 [of the ALJ] are adopted and are augmented. On August 27, 2018, while at work, the claimant's hand was injured. The employer was notified, and the claimant proceeded to an emergency room for medical attention. The claimant required surgery and was unable to work for approximately four months. He opened an industrial insurance claim, which remained open for the remainder of the employment relationship. The employer maintained consistent communication with a Department of Labor and Industries representative and complied with procedure, as directed. The record indicates the claimant did so, as well.

In mid-December 2018, the claimant was released by his physician to return to work. Based on information provided by the claimant's physician, the employer limited the claimant's work to light duty. The employer determined that light duty field work (which the claimant preferred) could not be consistently planned, and office work (also acceptable to the claimant), such as conversations with clients, were duties that already were performed by others. The claimant was instead assigned to answer a phone in the shop. The claimant sometimes could not work a full shift, primarily due to medical appointments and lengthy physical therapy sessions. The office manager noted the claimant failed to consistently work full shifts, and his absence for appointments seemed unduly long.

Findings of Fact Nos. 5 through 10 [of the ALJ] are adopted and are augmented. During the weeks that he was unable to work, pursuant to an industrial insurance related KOS (kept on salary) option, the claimant was paid his full wage by the employer.

On or about January 7, 2019 (approximately three weeks after the claimant had returned to work), the claimant was informed by the employer's owner that he (the claimant) was required to submit time cards, beginning with the pay period ending December 30, 2018, and that his time card was due. The claimant had completed time cards prior to his injury, but given his ongoing medical/therapy appointments, coupled with his prior KOS status, the claimant wanted to clarify procedure with his Department of Labor and Industries case manager. The claimant tried to contact his case manager, but to no avail. The claimant completed his time card to the best of his recollection.

When the claimant completed his time card, he reported hours on December 24 and December 25, as well as December 31 and January 1. The claimant did not work those days but reported the hours because he

8

understood he would receive holiday pay. The claimant was mistaken; the employer did not provide holiday pay. The claimant did not contact the owner to clarify that he would receive holiday pay. When the claimant submitted his time card, it was late in the day, and neither the office manager nor the owner were in the office. The claimant assumed that, if the owner questioned the claimant's time card, the owner would tell the claimant, which would provide an opportunity for clarification. That evening, the owner reviewed the claimant's reported hours and realized the claimant had reported hours on holidays (when work was not performed). The following morning, the office manager likewise noted the claimant's time card was not accurate. The owner (as well as the office manager) regarded the claimant's inaccurate time card to be an inherently dishonest, falsified record. Consequently, when the claimant arrived for work on January 10, 2019, he was discharged.

AR at 146-47. The ESD commissioner also adopted the ALJ's finding of fact 12, which

states:

> During the weeks Claimant sought unemployment benefits, Claimant was physically able to work, was available for work, and actively sought work, as required.

AR at 125.

> The ESD commissioner adopted the ALJ's conclusion of law 3, which states:

> Here, during the weeks Claimant sought unemployment benefits, Claimant was able to work, was available for work and actively sought suitable work as required by RCW 50.20.010(1)(c)(ii).

AR at 126. The commissioner also entered the following conclusions of law:

> Conclusion of Law No. 10 [of the ALJ] is adopted. As stated in the Initial Order, testimony of the parties conflicted on a material point: Whether the employer informed the claimant that holiday pay would be provided. In unemployment benefit appeals, proof beyond a reasonable doubt is not required, but it must be determined what more likely happened. In re Murphy, Empl. Sec. Comm'r Dec.2d 750 (1984). To that end, all the

9

evidence should be considered and weighed. *Id.* In this case, the administrative law judge determined the employer's testimony regarding holiday pay policy was more persuasive. Because there is evidential basis—sworn testimony based on personal knowledge of conversations at issue—the credibility finding will not be disturbed. However, the credibility finding does not preclude a conclusion that the claimant misunderstood the employer's holiday pay policy.

AR 147-48. The ESD commissioner augmented the ALJ's conclusions of law, as

follows:

> Conclusions of Law Nos. 12 and 13 [of the ALJ] are not adopted. We conclude instead as follows. Here, the claimant reported holiday hours that he had not worked, which understandably gave the employer reason for concern. However, there were mitigating circumstances. First, after several months of KOS payment of his wage, the claimant was told he must submit a time card and that his time card was immediately due. Although the claimant knew how to complete a time card, he evidently had questions regarding the transition (from the KOS system) but was not able to contact his case manager within the limited time he had been given. The significance of reporting holiday hours he had not worked is not discounted but is excusable because the claimant (albeit mistakenly) thought his employer paid provided [sic] holiday pay. The claimant should have consulted the owner for clarification but was given little meaningful opportunity to do so. Time was short, and when he submitted his time card, he saw nobody in the office to question. *More significantly, the claimant's course of action does not reflect dishonest intent. On the contrary, having reported four days of holiday pay (which evidence indicates nobody worked), the claimant submitted his time card with the knowledge that the hours he reported would be reviewed by the owner and the office manager. He anticipated that, if there were issues, the owner would tell him, which is exactly what happened. In short, the inaccuracy was too blatant to be described as deceptive. Absent evidence of prior dishonesty/falsification of records, the claimant's report of holiday hours reflects an isolated incident of mistake or poor judgment, which does not equate with willful or wanton disregard for his employer's interest. The decision to discharge the claimant is not questioned, but for purposes of unemployment benefit eligibility, misconduct has not been established.*

>    Conclusions of Law Nos. 14 and 15 [of the ALJ] are not adopted. In
> light of the foregoing, there is no overpayment and therefore no issue
> regarding liability for repayment.

AR at 148 (emphasis added).

After the ESD commissioner's ruling, DLI awarded Fred Stevens a permanent

partial disability award in the amount of $35,754.42.

PROCEDURE

White Water Construction filed, with the superior court, a petition for judicial

review of the ESD commissioner's decision. White Water again asserted that Fred

Stevens committed disqualifying misconduct and he must repay benefits received. White

Water alleged in the petition that Stevens falsified his time sheets by claiming hours

worked on holidays and by inflating his hours worked on days that he worked. Before

the superior court and for the first time, White Water challenged Stevens' ability and

availability to work and argued that his receipt of permanent partial disability benefits

from DLI disqualified him from receiving unemployment benefits.

The superior court reversed the ESD commissioner's order. The court concluded

that Fred Stevens was discharged for disqualifying misconduct. The superior court held

that: (1) substantial evidence did not support the commissioner's decision, (2) the

commissioner erroneously interpreted or applied the law, (3) the commissioner's decision

contravened ESD rules, and (4) the commissioner's decision was arbitrary or capricious.

The superior court ordered Stevens to repay benefits received.

11

No. 37414-9-III
*White Water Construction, Inc. v. Washington State Department of Employment Security*

LAW AND ANALYSIS

ESD appeals, to this appellate court, the superior court's decision. Although White Water Construction is the respondent on appeal to this court, we label it the challenger because, as supported later, the ESD commissioner's, not the superior court's, ruling, is under attack. RAP 10.3(h) demands that the respondent, who challenges any findings of fact of an administrative adjudicative order, but who won before the superior court, assign errors to the contested findings of fact.

White Water Construction assigns error to the ESD commissioner's findings of fact 3-10 and 12. Nevertheless, White Water does not provide argument for each discrete finding of fact that it challenges. We only address those findings for which White Water supplies argument and analysis. White Water also assigns errors to conclusions of law. It need not have done so.

White Water Construction contends that substantial evidence does not support a finding that Fred Stevens did not commit disqualifying misconduct by falsifying a time sheet. We divide this argument into two categories of alleged time sheet fraud: (1) time recorded for holidays and medical appointments; and (2) purported inflated time on days he worked. White Water also contends that Stevens was not eligible for unemployment compensation because his disability prevented him from working. At least, as argued by White Water, Stevens claimed he could not work such that judicial estoppel should preclude him from claiming otherwise in this proceeding. Finally, White Water observes

12

that Fred Stevens currently receives DLI benefits, and it argues that a statute does not permit concurrent recovery from both agencies. The many contentions prolong this opinion. In addition to rejecting White Water's arguments, ESD asks that we preclude White Water from contending Fred Stevens was unavailable to work since White Water did not assert this position before the ALJ or ESD commissioner.

White Water Construction challenges both rulings of the ESD commissioner that Fred Stevens is entitled to unemployment benefits and that Stevens need not repay benefits previously received. The issues forwarded for both challenges overlap, and we do not separately analyze the two contentions.

Judicial Review

The Washington Administrative Procedure Act (WAPA), chapter RCW 34.05, governs judicial review of a final administrative decision of the commissioner of the Employment Security Department. *Tapper v. Employment Security Department*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). WAPA requires a reviewing court to reverse an administrative decision when the court determines that:

> (d) The agency has erroneously interpreted or applied the law;
> (e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;
> . . . .
> (h) The order is inconsistent with a rule of the agency unless the agency explains the inconsistency by stating facts and reasons to demonstrate a rational basis for inconsistency; or

13

(i) The order is arbitrary or capricious.

RCW 34.05.570(3)(d)-(e), (h)-(i).

When reviewing an administrative decision, this court sits in the same position as the superior court in applying the standards of WAPA to the record before the agency. *Tapper v. Employment Security Department*, 122 Wn.2d 397, 402 (1993). We review the ESD commissioner's decision, not the ALJ's decision or the superior court's ruling. *Michaelson v. Employment Security Department*, 187 Wn. App. 293, 298, 349 P.3d 896 (2015). We deem the commissioner's decision prima facie correct. *Michaelson v. Employment Security Department*, 187 Wn. App. at 298. The party challenging the commissioner's decision, here White Water Construction, bears the burden of demonstrating the decision's invalidity. *Michaelson v. Employment Security Department*, 187 Wn. App. at 298.

Waiver of Challenge to Availability to Work

ESD argues that White Water Construction untimely challenged Fred Stevens' ability and availability to work, because the construction company raised this contention for the first time on appeal to the superior court. White Water agrees that it asserted this argument for the first time before the superior court. White Water answers that it did not know about Stevens' disability when the case was pending before the agency, and thus we should excuse its omission.

Under WAPA, when a party does not raise an issue before the administrative agency, it may not be raised on appeal or judicial review, except to the extent that:

> (a) The person did not know and was under no duty to discover or could not have reasonably discovered facts giving rise to the issue;
> . . . .
> (d) The interests of justice would be served by resolution of an issue arising from:
> . . . .
> (ii) Agency action occurring after the person exhausted the last feasible opportunity for seeking relief from the agency.

RCW 34.05.554(a),(d)(ii). An ESD regulation echoes the content of RCW 34.05.554.

WAC 192-04-170(6) declares:

> Any argument in support of the petition for review [to the superior court] or in reply thereto not submitted in accordance with the provisions of this regulation shall *not be considered in the disposition of the case absent a showing that failure to comply with these provisions was beyond the reasonable control of the individual seeking relief.*

(Emphasis added.)

When arguing that Fred Stevens was unavailable to work because of a disability, White Water relies on evidence not before the ESD commissioner. On judicial review, RCW 34.05.562 allows a court to consider evidence outside of the agency record, but only if "it relates to the validity of the agency action at the time it was taken and is needed to decide disputed issues regarding . . . [m]aterial facts in rule making, brief adjudications, or other proceedings not required to be determined on the agency record."

15

RCW 34.05.562(1)(c). Nevertheless, the reviewing court may remand a matter to the agency,

> with directions that the agency conduct fact-finding and other proceedings the court considers necessary and that the agency take such further action on the basis thereof as the court directs, if:
> . . . .
> (b) The court finds that (i) new evidence has become available that relates to the validity of the agency action at the time it was taken, that one or more of the parties did not know and was under no duty to discover or could not have reasonably been discovered until after the agency action, and (ii) the interests of justice would be served by remand to the agency.

RCW 34.05.562(2)(b).

ESD contends that White Water Construction knew about Fred Stevens' disability claim at the time of Stevens' appeal before the ESD commissioner. We disagree. In its reply to Stevens' appeal, White Water wrote that, as of June 11, 2019, the construction company had received no paperwork from DLI to substantiate any claim of disability. DLI records then showed Stevens to be injured, but not disabled. Fred Stevens received an award for permanent partial disability only months after the ALJ hearing.

We conclude that White Water reasonably did not know of any disability of Fred Stevens at the time of the proceeding before the ESD commissioner. Although White Water forwards new facts as to the disability, we could remand the case to the commissioner for consideration of the new facts. Nevertheless, in the interest of judicial economy, we agree to review White Water Construction's contention that Stevens was unavailable to work because of a disability.

16

Availability to Work

White Water Construction argues that, because Fred Stevens claims to be disabled, he is unable and unavailable to work and thus ineligible for unemployment benefits. In so arguing, White Water commits a fundamental error. It fails to recognize a difference between a partial disability and a total disability and that Stevens claimed only a partial disability.

Washington's Employment Security Act, Title 50 RCW, seeks to provide benefits for persons who have become unemployed through no fault of their own. RCW 50.01.010; *Cuesta v. Department of Employment Security*, 200 Wn. App. 560, 568, 402 P.3d 898 (2017). Consequently, we liberally construe the act in order to reduce involuntary unemployment and suffering caused thereby to a minimum. RCW 50.01.010; *Shoreline Community College District 7 v. Employment Security Department*, 120 Wn.2d 394, 406, 842 P.2d 938 (1992); *Griffith v. Department of Employment Security*, 163 Wn. App. 1, 8, 259 P.3d 1111 (2011). We view with caution any construction of the benefits statute that would narrow the coverage of the unemployment compensation laws. *Shoreline Community College District 7 v. Employment Security Department*, 120 Wn.2d 394, 406 (1992).

A claimant is eligible for unemployment benefits, if he or she "is able to work, and is available for work in any trade, occupation, profession, or business for which he or she is reasonably fitted." RCW 50.20.010(1)(c). RCW 50.20.010(1)(c)(i) declares:

To be available for work, an individual must be ready, able, and willing, immediately, to accept any suitable work which may be offered to him or her and must be actively seeking work pursuant to customary trade practices and through other methods when so directed by the commissioner or the commissioner's agents.

At the hearing before the ALJ, Fred Stevens testified that he was able and available to work. The commissioner adopted the ALJ's conclusion of law 3, finding that Stevens was able and available to work. In Stevens' May 30, 2019 petition to the commissioner, he stated for the first time that he was disabled. Fred Stevens received a permanent partial disability award in the amount of $35,754.42. A partial disability does not necessarily preclude a worker from work. Stevens had performed light duty work with White Water Construction, and he could have continued that work at the construction company or served as a foreman, where heavy duty was not required, for another contractor.

## Judicial Estoppel

In addition to assigning error to the finding that Fred Stevens was capable of work, White Water contends that Fred Stevens should be judicially estopped from simultaneously claiming that he is disabled and able to work. Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position. *Robbins v. Department of Labor & Industries*, 187 Wn. App 238, 255, 349 P.3d 59 (2015). Three core factors guide whether to apply the judicial estoppel doctrine: (1) whether a party's

later position is clearly inconsistent with its earlier position, (2) whether judicial

acceptance of an inconsistent position in a later proceeding would create the perception

that either the first or the second court was misled, and (3) whether the party seeking to

assert an inconsistent position would derive an unfair advantage or impose an unfair

detriment on the opposing party if not estopped. *Robbins v. Department of Labor &*

*Industries*, 187 Wn. App. at 255-56.

Fred Stevens commented in his petition to the ESD commissioner that he was

disabled and unemployed. He never wrote, however, that he was not employable or that

he was totally disabled. He garnered a partial, not a total, disability payment from DLI.

Therefore, his testimony that he was available for work was not inconsistent with his

petition to the commissioner. In fact, Stevens worked for White Water Construction

preceding his termination from employment despite his disability.

## Receipt of DLI Benefits

White Water Construction contends Fred Stevens may not garner both

unemployment compensation and workers' compensation at the same time. In so

arguing, White Water repeats the same fundamental error. Stevens received partial, not

total, disability payments from DLI.

Pursuant to RCW 50.20.085, an individual is ineligible for unemployment benefits

if he or she is the recipient of total disability compensation.

> An individual is disqualified from benefits with respect to any day or days for which he or she is receiving, has received, or will receive compensation under *RCW 51.32.060* or *51.32.090*.

RCW 50.20.085 (emphasis added). RCW 51.32.060 governs permanent *total* disability compensation and RCW 51.32.090 controls temporary *total* disability compensation. Permanent *partial* disability compensation is governed by RCW 51.32.080, a statute not listed in RCW 50.20.085.

### Disqualifying Misconduct

White Water Construction contends that ESD should deny Fred Stevens unemployment compensation because Stevens engaged in misconduct. An individual is disqualified from receiving unemployment benefits if he or she is discharged for misconduct connected with his or her work. RCW 50.20.066(1); *Cuesta v. Department of Employment Security*, 200 Wn. App. 560, 568-69 (2017). The question of discharge is independent of the question of misconduct. *Cuesta v. Department of Employment Security*, 200 Wn. App. at 569. Thus, just because a claimant's acts sufficed to justify discharge from employment does not necessarily mean that the conduct constitutes sufficient grounds to constitute statutory misconduct that disqualifies him from employment benefits. *Cuesta v. Department of Employment Security*, 200 Wn. App. at 569.

RCW 50.04.294(1) declares that "misconduct" includes, but is not limited to, the following conduct by a claimant:

> (a) Willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee;
> (b) Deliberate violations or disregard of standards of behavior which the employer has the right to except of an employee;
> (c) Carelessness or negligence that causes or would likely cause serious bodily harm to the employer or a fellow employee; or
> (d) Carelessness or negligence of such degree or recurrence to show an intentional or substantial disregard of the employer's interest.

WAC 192-150-205 defines language used in RCW 50.04.294, in relevant part:

> (1) "Willful" means intentional behavior done deliberately or knowingly, where you are aware that you are violating or disregarding the rights of your employer or a co-worker.
> (2) "Wanton" means malicious behavior showing extreme indifference to a risk, injury, or harm to another that is known or should have been known to you. It includes a failure to act when there is a duty to do so, knowing that injury could result.
> (3) "Carelessness" and "negligence" mean failure to exercise the care that a reasonably prudent person usually exercises.

WAC 192-150-205(1)-(3).

RCW 50.04.294(2) sets forth a nonexclusive list of behaviors that are per se misconduct, including:

> (a) Insubordination showing a deliberate, willful, or purposeful refusal to follow the reasonable directions or instructions of the employer;
> . . . .
> (c) Dishonesty related to employment, including but not limited to deliberate falsification of company records, theft, deliberate deception, or lying;
> . . . .
> (e) Deliberate acts that are illegal, provoke violence or violation of laws, or violate the collective bargaining agreement. However, an employee who engages in lawful union activity may not be disqualified due to misconduct; [and]

> (f) Violation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule.

"Misconduct" does not include:

> (b) Inadvertence or ordinary negligence in isolated instances; or
> (c) Good faith errors in judgment or discretion.

RCW 50.04.294(3)(b)-(c).

The employer carries the burden to show disqualifying misconduct. *Darneille v. Department of Employment Security*, 49 Wn. App. 575, 576-77, 744 P.2d 1091 (1987), *adhered to on remand*, No. 1082-3-II (Wash. Ct. App. Sept. 12, 1988) (unpublished). The burden is by a preponderance of evidence. *Darneille v. Department of Employment Security*, 49 Wn. App. 575, 576-77.

The ESD commissioner found that Fred Stevens committed a mistake that did not give rise to intentional disregard of White Water Construction's interests. White Water contends substantial evidence does not support this principal finding.

This court reviews the commissioner's fact findings for substantial evidence in light of the whole record. *Michaelson v. Employment Security Department*, 187 Wn. App. at 298. "Substantial evidence" is evidence that would persuade a fair-minded person of the truth or correctness of the matter. *Michaelson v. Employment Security Department*, 187 Wn. App. at 298. We will not substitute our judgment on witness credibility or the weight that should be given to conflicting evidence. *Michaelson v. Employment Security Department*, 187 Wn. App. at 299. The law authorizes the

commissioner to render his own independent determinations based on the record, and the commissioner has the ability and the right to modify or to replace an ALJ's findings, including findings of witness credibility. *Smith v. Employment Security Department*, 155 Wn. App. 24, 35-36 n.2, 226 P.3d 263 (2010).

White Water Construction emphasizes conclusion of law 12, wherein the ESD commissioner found the employer's testimony to be more logically persuasive. White Water impliedly contends that a determination that its testimony is more persuasive necessarily leads to a ruling that Fred Stevens falsified his time sheets and engaged in conduct that disqualifies him for unemployment benefits. The ESD commissioner's conclusion, however, does not necessarily mean that the commissioner adopted all of the inferences from the testimony favorable to White Water or that the commissioner discounted all of the testimony of Stevens. The commissioner could still conclude that Stevens misunderstood White Water's holiday pay policy. The commissioner could still draw the conclusion that the obviousness of Stevens' errors in the time sheets establishes that he did not deliberately falsify records or mislead his employer.

Ample evidence supports a finding that Fred Stevens did not engage in deliberate falsification. Stevens remained on KOS status, whereby White Water Construction paid him regardless of the hours he worked. He placed parentheses around time spent on medical appointments in order to alert his employer to the nature of the time he spent during those hours. Stevens wanted to discuss his situation with his DLI case manager

before submitting his time sheets, but he could not reach the manager, so he completed the sheets as best as he could recall despite his confusion. When Stevens submitted his time card, the day was late, and neither the office manager nor the owner was present. Stevens assumed that, if White Water questioned the time sheets, his employer would afford him an opportunity for clarification.

White Water Construction highlights that the ALJ found that owner Wayne Terry never told Fred Stevens that the construction company paid employees for Christmas or New Year's Day. In turn, White Water underscores that the ESD commissioner confirmed this finding. From this finding, White Water Construction extracts the conclusion that Fred Stevens must have lied when he testified that Terry informed him he would receive holiday pay such that Stevens must have deliberately falsified his time sheet. Nevertheless, just because two witnesses or parties tell a different story does not mean that one is lying or one engaged in deception.

We observe that even the administrative law judge found that Fred Stevens believed he would be paid for holidays. Neither the ALJ nor the ESD commissioner entered a finding that the belief was unreasonable or dishonest. Stevens had been employed less than one year such that he had not been employed before during the holiday season.

White Water Construction may argue that the simple fact that the time sheets were false means that Fred Stevens deliberately falsified the sheets. We disagree. White

24

Water also suggests that Stevens needed to prove, because of the falsified time sheet, that he did not deliberately mislead his employer. The law is to the contrary. The employer carries the burden of showing misconduct.

White Water Construction argues that, at the least, Fred Stevens engaged in carelessness or negligence. Nevertheless, misconduct for purposes of disqualification from benefits does not include ordinary negligence. RCW 50.04.294(3)(b).

In addition to contending that substantial evidence does not support the ESD commissioner's findings, White Water, while citing several Washington decisions, argues that the commissioner's decision was arbitrary and capricious, an erroneous application of the law, and against ESD's statutes and rules. We disagree.

White Water contends that submitting a false time card is misconduct per se under RCW 50.04.294(2). RCW 50.04.294(2)(c) defines "misconduct" as including "dishonesty related to employment, including but not limited to deliberate falsification of company records, theft, deliberate deception, or lying." Falsification of company time sheets does not constitute misconduct unless the falsification includes dishonesty. The ESD commissioner found Fred Stevens to lack a dishonest motive.

White Water Construction highlights two decisions: *Pacquing v. Employment Security Department*, 41 Wn. App. 866, 707 P.2d 150 (1985) and *Cuesta v. Department of Employment Security*, 200 Wn. App. 560 (2017). In the former case, Douglas Pacquing intentionally forged return-to-work slips with his physician's signature in order

to improve his work situation. This court found that Pacquing committed misconduct per se. In *Cuesta v. Department of Employment Security*, 200 Wn. App. 560 (2017), Jose Cuesta failed to inspect airplane parts that he approved and verified as inspected on two occasions. This court found that he committed misconduct per se.

In both *Pacquing v. Employment Security Department* and *Cuesta v. Department of Employment Security*, this court ruled that the employee committed misconduct per se. But in each case, the ESD commissioner had found that the employee committed an act of dishonesty by falsifying records. To repeat, in Fred Stevens' application for unemployment compensation proceeding, the commissioner, to the contrary found that Stevens did not act dishonestly.

White Water Construction also promotes *Smith v. Employment Security Department*, 155 Wn. App. 24 (2010) and *Griffith v. Department of Employment Security*, 163 Wn. App. 1, 259 P.3d 1111 (2011). In the former decision, employee David Smith recorded conversations with other people without their knowledge. Smiths' conduct was found to be in disregard to his employer's interest because he exposed his employer to litigation and liability. In *Griffith v. Department of Employment Security*, employee Loren Griffith harmed his employer by harassing a customer, resulting in Griffith being banned from a delivery location. In contrast, Fred Stevens' conduct does not expose White Water to harm or potential liability to third parties.

Finally, White Water Construction analogizes *Tapper v. Employment Security Department*, 122 Wn.2d 397 (1993). Karen Tapper's employer discharged her for an accumulation of problems, including excessive time away from her work area, failing to listen to her supervisor and abide his instructions, and engaging in disruptive conversations and screaming outbursts. Tapper's employer had previously warned her about her behavior. On the day of her discharge, Tapper arrived to work 15 minutes late, and her employer requested that she record her tardiness as leave without pay. Tapper, instead, recorded eight hours on her time card. ESD denied recovery and the Supreme Court affirmed. In contrast, Fred Stevens had no history of any problematic behavior. Stevens did not disobey a direct instruction not to include, on his time sheet, particular minutes as being worked.

Two Washington decisions, coincidentally involving the same employer, support the ESD commissioner's decision. In *Kirby v. Department of Employment Security*, 185 Wn. App. 706, 342 P.3d 1151 (2014), ESD afforded Sarah Black benefits after her employer fired her for posting a blog. This court affirmed because Kirby did not commit misconduct when her employer failed to prove that she knew of a purported employer's social media policy. In *Kirby v. Department of Employment Security*, 179 Wn. App. 834, 320 P.3d 123 (2014), this court affirmed the conclusion that employee Dorothy Thomas did not commit misconduct when her conduct resulted from apprehension and confusion about the employer's instructions and a breakdown in communication with the employer.

27

We may agree with White Water Construction that ample evidence would support a finding by the ESD commissioner that Fred Stevens engaged in deliberate falsification of employer records such that the commissioner could have disqualified Stevens from unemployment compensation. Nevertheless, the contrary is also true. Substantial evidence supported a finding that Stevens did not engage in a deliberate falsehood. We must defer to the commissioner's decision when supported by the findings. In the cases promoted by White Water, this court deferred to the commissioner's findings when he found misconduct.

White Water Construction alleged before the ALJ and the ESD commissioner that, in addition to Fred Stevens' falsifying of time sheets for holiday pay and time at medical appointments, Stevens inflated hours worked on other occasions. White Water presented testimony at the evidentiary hearing that supported its position of the inflation of time worked. When finding that Stevens did not intend to deceive White Water, the ESD commissioner highlighted that the reporting of holiday hours was so obvious that an employee would not have falsified these hours unless he believed he was entitled to holiday pay. The commissioner also emphasized that Stevens placed time spent at medical appointments in parentheses. Neither of these factors, however, help to persuade a factfinder into finding good faith on behalf of Stevens with regard to inflating the hours he worked on nonholiday days and when not at appointments.

The ALJ did not address separately the purported inflated time sheets. Since the ALJ deemed all entries intentionally misleading to the employer, the ALJ need not have distinguished the time that Fred Stevens allegedly inflated on his accounting for work. Nevertheless, because of the ruling of the ESD commissioner, the commissioner, in order to permit appellate review, should have entered a finding as to whether Fred Stevens inflated nonholiday hours worked, and, if so, whether the inflation was a mistake or act of deception. Although ESD argues on appeal that the commissioner addressed the inflated time in his findings of fact and conclusions of law, we cannot locate any such finding.

## REMEDY

Because we cannot determine whether the ESD commissioner concluded that Fred Stevens inflated his hours on work days or, if so, whether the commissioner excluded Stevens' entries as being intentional deception, we remand for further proceedings before the commissioner. We direct the ESD commissioner to enter at least two findings of fact: (1) whether Stevens inflated his time worked on work days, and (2) whether any inflation of time involved a dishonest motive. The commissioner can, at his option, choose to hear additional evidence or decline to entertain additional testimony.

RCW 34.05.574(1) provides, in relevant part:

> In a review under RCW 34.05.570, the court may (a) affirm the agency action or (b) order an agency to take action required by law, *order an agency to exercise discretion required by law*, set aside agency action, enjoin or stay the agency action, *remand the matter for further proceedings*, or enter a declaratory judgment order. . . . In reviewing matters within

agency discretion, the court shall limit its function to assuring that the
agency has exercised its discretion in accordance with law, and shall not
itself undertake to exercise the discretion that the legislature has placed in
the agency.  The court shall remand to the agency for modification of
agency action, unless remand is impracticable or would cause unnecessary
delay.

White Water Construction argues that the undisputed evidence establishes that

Fred Stevens falsified his time sheets by inserting hours on days he worked above his

actual work time.  Thus, White Water impliedly contends we need not remand the case to

the ESD commissioner to rule in its favor.  Nevertheless, White Water does not identify

any testimony that Stevens agreed that he inflated his time on work days.  White Water

inconveniently, if not unfairly, asked Stevens to reconstruct the hours he worked in the

past weeks when he had not expected any need to account for his time.  Also, he expected

that White Water would correct his accounting for time if he was inaccurate.  Based on

these facts, on remand the ESD commissioner could find that mistakes for hours worked

on work days were made in good faith and that Stevens did not deliberately mislead his

employer.

Our function is to review the decisions of the agency, not to try the case de novo.

*Tapper v. Employment Security Department*, 122 Wn.2d 397, 402–03, 858 P.2d 494

(1993); *Shaw v. Department of Retirement Systems*, 193 Wn. App. 122, 133, 371 P.3d

106 (2016).  When an agency's decision omits a critical finding, we do not perform our

own review of the record or weigh the credibility of the witnesses.  *Shaw v. Department*

*of Retirement Systems*, 193 Wn. App. 122, 134 (2016). We instead remand to the agency for further proceedings. *Shaw v. Department of Retirement Systems*, 193 Wn. App. at 134.

Since the employer carries the burden of proving misconduct, we could hold that White Water Construction failed to establish that Fred Stevens dishonestly inflated work hours. The absence of a finding on a material issue is presumptively a negative finding entered against the party with the burden of proof. *Golberg v. Sanglier*, 96 Wn.2d 874, 880, 639 P.2d 1347, 647 P.2d 489 (1982); *State v. Budd*, 186 Wn. App. 184, 199, 347 P.3d 49 (2015), *aff'd*, 185 Wn.2d 566, 374 P.3d 137 (2016). Out of fairness to White Water, however, we remand for further proceedings because we are uncertain as to whether the ESD commissioner considered the one distinct argument asserted by White Water.

Attorney Fees

White Water Construction requests an award of reasonable attorney fees incurred on appeal pursuant to RCW 4.84.350, a portion of the Equal Access to Justice Act. RCW 4.84.350 declares:

> Except as otherwise specifically provided by statute, a court shall award a qualified party that *prevails* in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. A qualified party shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought.

31

RCW 4.84.350(1) (emphasis added). White Water has not prevailed in this judicial review. So we deny the request for fees.

CONCLUSION

We remand this proceeding to the ESD commissioner for the purpose of deciding and entering a finding of fact as to whether Fred Stevens inflated his hours worked on work days and whether any inflation disqualifies him from unemployment benefits. We otherwise affirm the commissioner's rulings and thereby reverse the superior court.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, A.C.J.

_____
Lawrence-Berrey, J.